CHICAGO, R. I. & P. RY. CO. v. BALDWIN.

(Circuit Court of Appeals, Eighth Circuit. October 31, 1908.)

No. 2,803.

1. RAILROADS (§ 383*)—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE—FACTS HELD TO CONCLUSIVELY ESTABLISH.

A superintendent who had been in charge of some repairing of the Omaha Bridge of the Union Pacific Railroad Company for two months was overtaken and knocked off the north track thereon, which was used for west-bound trains, by a Rock Island engine which came up behind him at a negligently rapid speed while an east-bound train was passing on the south track. He was walking west on the bridge about 300 feet from the east end of it about 10 minutes after 7 on a morning in June. Floor beams from 6 to 10 inches in width extended upon each side beyond the ties, the rails and the space covered by passing trains at regular intervals of about 24 feet to substantial railings, and pedestrians could step out upon these beams to the railings and stand there safely while two trains were passing at the same time. The superintendent was killed by the fall from the bridge. At any time while he was walking the last 100 feet and was necessarily passing at least 3 of these extended beams he could have seen the Rock Island train approaching if he had looked behind him.

*Held,* these facts conclusively established that the decedent was guilty

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of contributory negligence, and the court should have instructed the jury that the administratrix of his estate could not recover damages on account of his death.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1305–1307; Dec. Dig. § 383.*]

2. NEGLIGENCE (§ 80*)—NEGLIGENCE OF DEFENDANT NO EXCUSE FOR CONTRIBUTORY NEGLIGENCE OF PLAINTIFF.

Under the common law one whose negligence directly contributes to his injury cannot recover damages of another whose negligence concurred to cause it. The negligence of the latter is no excuse for the contributory negligence of the former.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 84; Dec. Dig. § 80.*]

3. NEGLIGENCE (§ 66*)—FAILURE TO DILIGENTLY USE SENSES TO AVOID THREATENED DANGER IS CONTRIBUTORY NEGLIGENCE.

Where a diligent use of the senses by the person injured would have avoided a known or apprehended danger, a failure to use them is, under ordinary circumstances, contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 86; Dec. Dig. § 66.*]

4. NEGLIGENCE (§ 136*)—TRIAL—DUTY TO DIRECT VERDICT WHERE FAILURE TO USE SENSES CONCLUSIVELY PROVED.

Where such a failure to use the senses is established by undisputed or conclusive evidence, it is the duty of the trial court to instruct the jury that there can be no recovery of damages on account of the injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 291; Dec. Dig. § 136.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

J. L. Parrish (W. D. McHugh and Carroll Wright, on the brief), for plaintiff in error.

W. J. Connell, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge. This is an action by the administratrix of the estate of Henry D. Baldwin, deceased, under a statute of Iowa, to recover damages of the Rock Island Company for causing his death by its alleged negligence. In this court the negligence of the company is conceded, and the first question presented is whether or not the evidence so conclusively proves that the decedent was guilty of contributory negligence that the court should have instructed the jury to return a verdict for the company. The defendant introduced no evidence, and the facts relative to the issue were established without dispute. Mr. Baldwin was an employé of the Union Pacific Railway Company, and he was superintending the repair of its bridge across the Missouri river at Omaha. He had been engaged in the discharge of this duty from April until June 4, 1906, when a train of the Rock Island Company knocked him off the bridge and killed him. This bridge was about 1,700 feet long. There were two railroad tracks upon it. The north one was used by west-bound and the south

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one by east-bound trains. Floor beams from 6 to 10 inches in width extended beyond the portion of the bridge covered by the ties, the rails and the passing cars to substantial railings on each side of the bridge, and employés could safely step out upon these beams and stand by the railings when trains were passing upon both tracks. These extended floor beams had been placed at regular intervals and were between 24 and 25 feet apart. Several railroad companies, and among them the Rock Island Company, rightfully ran their trains across the bridge, and about 100 trains passed over it daily between 7 in the morning and 6 in the evening. There was an order in force that trains should not pass over the bridge at a greater speed than 4 miles an hour, and the train which struck the deceased ran over it at a speed of about 20 miles an hour. He was walking west on the north track at a point about 300 feet west of the east end of the bridge about 10 minutes after 7 in the morning when the engine of the west-bound Rock Island train overtook him and killed him. The bridge and the tracks upon it and east of it were straight for about two miles, the view along them for at least one mile from the place of the accident was unobstructed, and this approaching train could have been seen by the decedent for at least a mile if he had looked along the track upon which it came. When he was about 60 feet from the east end of the bridge he met one of the witnesses, and when he was about 200 feet from it he met another. He was then walking between the tracks or on the south track, and an east-bound train of the Northwestern Railroad Company, consisting of an engine and 5 or 6 cars, was coming over the bridge upon the south track. Each of the two witnesses saw both the Rock Island train which was coming to meet them, and the Northwestern train which was coming behind them, before these trains came dangerously near them. The two trains passed each other on the east part of the bridge, but the evidence does not show clearly how near the east end. The Rock Island Company's engine struck the deceased about 300 feet from the east end of the bridge. He must therefore have walked about 100 feet after the witness who met him 200 feet from the end of the bridge left him and went on toward the east. This witness testified that when he had walked about 25 feet from the place of their meeting he saw the Northwestern train coming behind him, and shortly after observing it he saw the Rock Island train coming towards him, and he then ran, crossed the south track, and went off the east end of the bridge as the Rock Island train entered upon it. Both trains must have been in full view of Baldwin when he left this witness. He walked about 100 feet and then the Rock Island engine overtook him. If he walked at the rate of 3 miles an hour and the train ran 20 miles an hour, it must have been within 200 feet of him when he parted from the witness. The latter walked 25 feet and ran 175 feet, and the Rock Island engine was then entering upon the bridge. If this witness moved but 5 miles an hour and the train 20 miles an hour, the latter could not have been more than 1,100 feet from the two men when they separated. The view of the track was and continued to be unobstructed, except by this approaching train, for the distance of at least a mile east of them. As the evidence does not clearly show at what point the two trains passed

each other, the fact that they passed so near to the place where Baldwin was overtaken that he could not have saved himself by stepping on to the south track is assumed. But this did not relieve him of the duty to use his senses to protect himself from the train that was coming upon the north track. He knew that the north track was used for trains which must come up behind him. If he had looked to the east when he parted from the last witness who met him, he could not have failed to see the Rock Island train approaching. Between the point where these two men parted and the place where he was overtaken there were at least three extended floor beams where he could have stepped out to the railing and have waited safely until both trains had passed. The bridge and the railroad tracks upon it in such frequent use were constant warnings of the danger of coming trains. It was his duty to exercise ordinary care to protect himself from them, and the exercise of that care required him to be so alert and watchful for his own welfare that trains, coming in plain view for the distance of a mile, which he could escape by looking behind him and by moving with reasonable celerity from their track, should not strike him upon it. Under these undisputed facts there is no escape from the conclusion that if the decedent had looked behind him at any time when he was walking the first 75 of the last 100 feet he must have seen the fatal engine approaching him, and he could easily have stepped out upon an extended floor beam and have escaped it. If he did not look he was guilty of negligence, and if he looked and did not step out upon one of these beams to the railing beyond reach of the engine he was likewise guilty, and in either event his negligence contributed to his injury, for if he had exercised ordinary care to look and to act he would have escaped the accident.

In Missouri Pacific Ry. Co. v. Moseley, 57 Fed. 921, 925, 6 C. C. A. 641, 645, the plaintiff was overtaken and injured by an engine which came up behind him while he was walking upon one railroad track and the roar of a train upon an adjoining track had rendered his hearing useless, and we held that this fact made the frequent and diligent use of his eyes to see what was coming behind him more imperative, and that as his view of the engine approaching behind him had been unobstructed he was conclusively guilty of contributory negligence and could not recover. Under the common law one whose negligence directly contributed to his injury cannot recover damages of another whose negligence concurred to cause it. The negligence of the latter is no excuse for the contributory negligence of the former. Railroad Company v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Schofield v. Railroad Company, 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 383, 19 Sup. Ct. 763, 43 L. Ed. 1014; Blount v. Grand Trunk Ry. Co., 61 Fed. 375, 9 C. C. A. 526; Pyle v. Clark, 79 Fed. 744, 25 C. C. A. 190; Chicago & Northwestern Ry. Co. v. Andrews, 130 Fed. 65, 73, 74, 64 C. C. A. 399, 407, 408; Garlich v. Northern Pacific Railroad Co., 131 Fed. 837, 840, 67 C. C. A. 237, 240.

Where a diligent use of the senses by the person injured would have avoided a known or apprehended danger, a failure to use them is, under ordinary circumstances, contributory negligence; and, where such

a failure is established by undisputed or conclusive evidence, it is the duty of the trial court to instruct the jury that there can be no recovery of damages on account of the injury. Railroad Company v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Schofield v. Railroad Company, 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Patton v. Railroad Company, 179 U. S. 658, 660, 21 Sup. Ct. 275, 45 L. Ed. 361; Missouri Pacific Company v. Moseley, 57 Fed. 921, 925, 6 C. C. A. 641, 645; Chicago Great Western Ry. Co. v. Roddy, 131 Fed. 712, 713, 65 C. C. A. 470, 471; Gilbert v. Burlington & C. R. Ry. Co., 128 Fed. 529, 532, 533, 63 C. C. A. 27, 30, 31; Clark v. Zarniko, 106 Fed. 607, 608, 45 C. C. A. 494, 496; Chicago & Northwestern Ry. Co. v. Andrews, 130 Fed. 65, 73, 74, 64 C. C. A. 399, 407, 408; Western Union Telegraph Co. v. Baker, 140 Fed. 315, 319, 72 C. C. A. 87, 91.

The judgment must accordingly be reversed, and the case remanded to the court below with instructions to grant a new trial, and it is so ordered.