NEW YORK, N. H. & H. R. CO. v. MURPHY.

(Circuit Court of Appeals, Second Circuit. April 14, 1913.)

No. 201.

1. MASTER AND SERVANT (§ 137*)—DEATH OF SERVANT—OPERATION—RULES—REASONABLENESS.

Rules of defendant railroad company provided that a train must not run on a single track from any point until the arrival of all trains in the opposite direction of the same or superior class which are due by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

time-table at or before its schedule time of leaving; that an inferior train must keep out of the way of a superior train; that when an inferior train meets a superior train on a single track the inferior train must clear the superior train 10 minutes, unless otherwise provided in the time-table; that an inferior train must keep at least 10 minutes off the time of a superior train in the same direction; that no train shall follow another within 10 minutes, except as provided for in the time-table, unless some form of block signal is used; that when a train is stopped, or is delayed under circumstances in which it may be overtaken by the following train, the flagman must go back immediately with danger signals a sufficient distance to insure protection; also that, when acting as rear brakeman, the servant must protect the rear of the train without waiting for signals or orders to do so, and must keep a sharp lookout for signals carried by other trains, and be prepared to correct any oversight or mistake. *Held*, that such rules were reasonable, and, if complied with, were sufficient to prevent rear-end collisions, as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

2. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES— EFFECT—NEGLIGENCE—VERDICT.

Decedent, a rear brakeman on a freight train, while sitting in the caboose, was killed by a rear-end collision with an extra wrecking train following at high speed. If decedent had followed the rules for the protection of his train in connection with an order from the dispatcher's office, no collision would have occurred, and there was no evidence of negligence in the dispatching of the wrecking train; but there was evidence that this train was traveling at excessive speed. The court submitted to the jury issues of alleged negligence of the defendant in dispatching the wrecking train, and also in its operation at excessive speed, and plaintiff had a verdict. *Held* that, there being nothing to show on which of the issues the verdict was found, it could not be sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

In Error to the District Court of the United States for the District of Connecticut; Julius M. Mayer, Judge.

Action by John Murphy, administrator of the estate of Charles J. Murphy, against the New York, New Haven & Hartford Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

J. F. Berry and Wm. C. Mitchell, both of New Haven, Conn., for plaintiff in error.

D. G. Perkins, of Norwich, Conn., and J. S. Murphy, of Lowell, Mass., for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. John Murphy, the plaintiff, a citizen of Vermont, brought this suit under the Employer's Liability Act of Congress of April 22, 1908, to recover damages of the New York, New Haven & Hartford Railroad Company, a corporation of Connecticut, for the death of his intestate, Charles J. Murphy, who was also his son.

April 2, 1910, the deceased was flagman of regular freight train 772, and while sitting in the caboose was killed by a rear-end collision with extra wrecking train 413. The complaint charges the defendant

with negligence in failing to so dispatch the trains as to prevent the collision, and in running No. 413 at such great speed and at such a short interval after 772 that it overtook and collided with 772. The defendant's road between Norwich, Conn., and Worcester, Mass., is a single track, and on the morning in question three trains left Norwich bound north as follows: No. 772, a regular freight train, at 5:50 a. m. to Worcester; No. 704, a regular passenger train, at 6:08 a. m. to Worcester; No. 413, an extra wrecking train, at 6:22 a. m. to Plainfield, Conn. Before leaving Norwich, a written telegraphic order from the train dispatcher's office at Hartford was given to the conductor and engineer of No. 772 and to the engineer of No. 413 reading:

"Eng. 410 four ten will run extra Plainfield to Norwich with right over No. 772 seven seventy-two Plainfield to Jewett City and will meet extra 413 four thirteen north at Jewett City."

Train 410 was an extra south-bound freight. The meaning of the order was that 772 and 413 were to go to Jewett City north-bound, and there meet and let pass 410 south-bound. This last train is of no further importance in the case. Train 731 was a regular passenger electric train running on the defendant's track from a point north of Jewett City south-bound to Taft Station, scheduled to meet 704 at Jewett City and having preference over 772 and 413.

Some of the relevant rules of the defendant are:

83. A train must not be run on single track from any point until the arrival of all trains in the opposite direction of the same or superior class which are due by time-table at or before its schedule time of leaving. (See rule 86.)

86. An inferior train must keep out of the way of a superior train.

88a. When a train of inferior class meets a train of superior class on single track, the train of inferior class must take the siding and clear the train of superior class ten minutes, unless otherwise provided for in the time-table.

90. An inferior train must keep at least ten minutes off the time of a superior train in the same direction, unless otherwise provided for in the time-table.

91. No train or section of a train shall follow another train within ten minutes, except as provided for on the time-table, unless some form of block signal is used.

99. When a train stops or is delayed under circumstances in which it may be overtaken by a following train, or needs protection, flagman must go back immediately, with danger signals, a sufficient distance to insure full protection.

If upon a level or up grade, he will fasten one torpedo on top of rail at least 12 telegraph poles from the rear of his train, then go back 6 poles farther and fasten two more torpedoes on top of rail, one rail length apart; if on a down grade, he will fasten one torpedo on top of rail at least 18 telegraph poles from the rear of his train, then go back 18 poles farther and place two more torpedoes on top of rail one rail length apart; after doing this he may return to a point between the torpedoes placed and wait for any approaching train prepared to display proper signals in full view. using every effort to attract attention in season to stop it. When recalled, he will look and listen for any approaching train, and, if none is located, take up the single torpedo nearest the train (leaving the other two), and return. If recalled before placing torpedoes the required distance, a fusee should be lighted and left on the track. If called in after the train which he is protecting has taken a siding to allow a following train to pass, he will leave no torpedoes or fusee. Should the grade be heavy, weather bad, or view likely to be cut

off by smoke from passing trains, he must go as much beyond the distance
named as circumstances may make necessary to safely protect his train.

In flagging at night great care must be used that a green or white light
does not obscure the red. Stop signal should be swung until answered by ap-
proaching train.

When upon single track it becomes necessary to protect the front of the
train, or when another track is obstructed, the front brakeman (when nec-
essary the fireman) must go forward and use the same precautions.

809. When acting as rear brakeman they must be on the last car, and pro-
tect the rear of the train when necessary without waiting for signals or or-
ders to do so. They must keep a sharp lookout for signals carried by other
trains, and keep in mind all orders and notices regarding the movement
of trains, so as to be prepared to correct any oversight or mistake, if there
should be any occasion for so doing.

This is what happened: The north-bound trains passed Tafts as
follows: 772 at 5:58; 704 at 6:15; 413 at 6:53. Train 772 then
went into the first siding, which was two miles north of Tafts, viz.,
Lisbon Siding, to let 704, a first-class train, pass on north-bound to
Jewett City, and remained there until 731, also a first-class train, had
passed south-bound. All this was quite within the rules. Then it was
the duty of 772 to pull out of the siding and proceed to Jewett City.
It was at this point that the negligence which caused the collision oc-
curred. After 731 had passed Lisbon Siding, 772 pulled out at 6:49.
The morning was very foggy, yet the deceased did not protect his train
by putting out torpedoes and burning a fusee as he should have done
under rule 99. After 731 had passed Tafts, 413 started at 6:53, at-
taining a speed of 35 miles an hour. The engineer of 413 must have
known that 772 had gone either into Lisbon Siding or Reade's Siding
to let 731 pass, and in such close proximity it was a fair question
whether the speed was not too great.

The trial judge left it to the jury to say whether the negligence of
the defendant in dispatching the train was the proximate and sole
cause of the collision, whether negligence in running 413 was the
proximate and sole cause of the collision, and whether negligence of
the deceased was the proximate and sole cause of the collision.

The material portion of the act in question is Act April 22, 1908,
c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322):

"Section 1. That every common carrier by railroad while engaging in
commerce between any of the several states or territories, or between any
of the states and territories, or between the District of Columbia and any
of the states or territories, or between the District of Columbia or any of
the states or territories and any foreign nation or nations, shall be liable
in damages to any person suffering injury while he is employed by such car-
rier in such commerce, or in case of the death of such employé, to his or
her personal representative, for the benefit of the surviving widow or hus-
band and children of such employé; and, if none, then of such employé's
parents; and, if none, then to the next of kin dependent upon such employé,
for such injury or death resulting in whole or in part from the negligence of
any of the officers, agents, or employés of such carrier, or by reason of any
defect or insufficiency, due to its negligence, in its cars, engines, appliances,
machinery, track, roadbed, works, boats, wharves, or other equipment."

Section 3 provides that contributory negligence shall not bar a re-
covery, but shall diminish the damages in proportion to the amount of
negligence attributable to the employé.

The jury found a verdict for the plaintiff in the sum of $10,000,

and made answer to two interrogatories that the full damages were $15,000, and that they had deducted $5,000 as the proportion attributable to the negligence of the deceased. The court reduced the verdict to $7,000, and the plaintiff accepted the remittitur.

[1, 2] We think that there was no question of negligence in respect to the dispatching of the trains to be submitted to the jury and that it was error to do so. The defendant's rules were reasonable and sufficient. If they had been followed in connection with the order from the dispatcher's office, no collision would have occurred. In other words, if the deceased had protected train 772, or if 413 had observed the prescribed interval of 10 minutes in following 772, or had not gone at excessive speed, there would have been no collision. The negligence of the deceased was quite apparent, and so the jury found. Therefore the only ground left on which the plaintiff could have recovered was negligence in operation of 413. We cannot tell from the verdict whether the jury found in favor of the plaintiff on the ground of the defendant's negligence in dispatching the trains, or on the ground of negligence in operating 413, or on both grounds.

Judgment reversed.