CHICAGO, ST. P., M. & O. RY. CO. v. KROLOFF.

(Circuit Court of Appeals, Eighth Circuit.   October 12, 1914.)

No. 4098.

(*Syllabus by the Court.*)

1. APPEAL AND ERROR (§§ 1031, 1062*)—PREJUDICIAL ERROR—REFUSAL TO WITHDRAW CHARGE—PRESUMPTION OF PREJUDICE.

A refusal by the court to grant a specific request to withdraw from the jury at the close of the trial one of several charges of negligence on which the plaintiff is seeking to recover is fatal error, if there is no substantial evidence to sustain that charge, although there may be evidence to sustain others, because the presumption is that error produces prejudice, and the appellate court cannot know that it was not upon that baseless charge that the jury founded its verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038-4046, 4212-4218;   Dec. Dig. §§ 1031, 1062.*] .

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRIAL (§ 145*)—DIRECTION OF VERDICT—EVIDENCE.

It is the duty of the trial court at the close of the evidence, at the request of counsel, to direct the finding of the jury upon each issue of fact upon which the evidence is undisputed, or so clearly preponderant, or of such a conclusive character that the court would be bound in the exercise of a sound judicial discretion to set aside a contrary finding.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 328, 341; Dec. Dig. § 145.*]

3. RAILROADS (§ 383*)—RAILROAD YARDS—DUTY OF PEDESTRIAN.

"No one, whether passenger, licensee, or trespasser, can frequent or walk over a private railroad yard covered by many tracks employed constantly for a variety of purposes like through travel, switching, breaking up, and making up trains, without scrupulously * * * exercising the utmost * * * vigilance in looking out for approaching engines and trains." Hart v. Northern Pacific Ry. Co., 196 Fed. 180, 185, 116 C. C. A. 12, 17. It is his duty to look and listen. If he cannot see or hear that no engines or cars are approaching, it is his duty to stop until he can. If smoke or steam obscure his vision, or noise his hearing, it is his duty to keep off the track until they so disappear that he can be sure that he will incur no danger by entering upon or crossing it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1305–1310; Dec. Dig. § 383.*]

4. MASTER AND SERVANT (§ 137*)—INJURY TO RAILROAD EMPLOYÉ—RAILROAD YARD—NEGLIGENCE.

It is not a lack of ordinary care for a railroad company to fail, in its private railroad yard in constant and active use, over which its employés have been and are in the habit of crossing to and from their work, not in crowds, but thinly scattered, to place or maintain a man for the purpose of warning employés of its approach, notifying the engineer of their proximity, and turning an angle cock to stop it, upon a switch engine which is working in the yard, with its bell ringing, its headlight burning, and its engineer and fireman watching for the employés and handling the engine as the rule of the company requires them to do.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Action by Maurice Kroloff, administrator of the estate of Joseph Brotsky, deceased, against the Chicago, St. Paul, Minneapolis & Omaha Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

George W. Peterson, of St. Paul, Minn. (Sargent, Strong & Struble, of Sioux City, Iowa, on the brief), for plaintiff in error.

Arnold L. Fribourg, of Sioux City, Iowa (Henderson & Fribourg, of Sioux City, Iowa, on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. A judgment for $6,000 for alleged negligence causing death is assailed here. The railroad company, the defendant below, complains that the trial court did not withdraw from the jury the charges of the defendant's negligence and that it did not instruct the jury that the evidence conclusively proved that Joseph Brotsky contributed to his own injury. These facts were admitted or conclusively proved: Brotsky was killed by his collision

with a switch engine of the defendant, which was backing north on the defendant's north-bound main track in its yards at Sioux City at about 6 a. m., on October 16, 1912. At the place of the accident the track was free from obstructions to the vision, other than smoke and steam from the engines, for more than 1,000 feet to the south. There was a headlight on the north end of the switch engine, which was burning, and the bell of the engine was ringing. The railroad yards of the defendant extend north and south at Sioux City for 2 or 3 miles, and it was in a busy part of these yards, and within 4 or 5 blocks south of its roundhouse, oilhouse, and coal chute that this accident happened. The north-bound main track of the defendant extends through these yards from south of Seventh street to Twenty-Second street. Adjoining this track on the west lies the defendant's south-bound main track, and east of its north-bound main track and nearly parallel to it extends the main track of the Illinois Central Railroad Company. There are public crossings of these tracks at Seventh street, Eleventh street, and Nineteenth street, but none between these streets. The accident occurred between Thirteenth street and Fourteenth street, where there was no public crossing, but many of the employés of the defendant, and among them Mr. Brotsky, who worked for the defendant on the west, and lived on the east, side of these tracks, had been accustomed to cross them near the place of the accident in going to and from their work. Brotsky was going to his work. He was last seen alive walking north in the railroad yard between Eleventh and Fourteenth streets. At the time and place where the accident occurred the hostler was backing an engine down the south-bound main track of the defendant, and with it was pulling another engine. The more southerly engine had its cylinder cocks open and was blowing steam, and it passed the north-bound switch engine at about the time and place of the accident. The only light on the south end of the south-bound engine was a red light in a lantern. It had a headlight shining north. The engineer of the switch engine was on the west side of his engine, with his head and shoulders out the window; the fireman was on the east side of the engine looking north; the hostler, driving the south-bound engine, was on the east side of his engine, watching the tracks to the south of him. They were all watching for pedestrians and obstructions, but none of them saw Mr. Brotsky. After the accident some of his remains and his lunch were found along and near the west rail of the north-bound track at the place where the engines passed each other, and some of them were found on the west front and rear drivers and on the brake rigging of the north-bound engine, but none on the trucks of the tender which preceded it, or on the north footboard, strongly indicating that he collided with the engine on its west side at the time the south-bound engine passed it blowing steam from its cylinder cocks. The crew of the switch or north-bound engine consisted of the engineer, the fireman, the foreman, and two helpers. It was the duty of the engineer and fireman to look out for pedestrians and to use reasonable care to avoid collision with them. There was no evidence that this was the duty of the other three members of the crew, when, as in the case in hand, the engine was making a long movement, a mile or a mile and a half in

length, from one yard or part of a yard to another. Their duties were to turn switches, make couplings, and handle cars, and at the time of the accident these three men were riding on the south footboard.

[1] The charges of negligence which the court submitted to the jury were: (1) Omission to ring the bell; (2) omission to sound the whistle; (3) omission to maintain a sufficient headlight; (4) omission to have the foreman or one of his helpers on the north footboard to look out for and warn pedestrians, and to turn the angle cock and stop the engine. The defendant not only requested the court below to instruct the jury to return a verdict for the defendant on the ground that none of these charges was sustained by substantial evidence, but it made specific requests that the court withdraw each of these charges, and excepted to its refusal of each request, so that, if there was no substantial evidence to sustain any one of these charges, the judgment must be reversed, because, although there was sufficient evidence to sustain other charges, it may be that it was on that very charge that the jury based its verdict. A refusal by the court to grant a specific request to withdraw from the jury one of several specific charges of negligence on which the plaintiff is seeking to recover is fatal error, if there is no substantial evidence to sustain that charge, although there may be evidence to sustain others, because the presumption is that error produces prejudice, and the appellate court cannot know that it was not upon that baseless charge that the jury founded its verdict. Wilmington Mining Co. v. Fulton, 205 U. S. 60, 79, 27 Sup. Ct. 412, 51 L. Ed. 708; Deserant v. Cerillos Coal R. R. Co., 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127; Bank of Havelock v. Western Union Telegraph Co., 141 Fed. 522, 526, 72 C. C. A. 580, 584, 4 L. R. A. (N. S.) 181, 5 Ann. Cas. 515; Armour & Co. v. Russell, 144 Fed. 614, 615, 75 C. C. A. 416, 417, 6 L. R. A. (N. S.) 602; Stevens v. Citizens' Gas & Electric Co., 132 Iowa, 597, 109 N. W. 1090.

[3, 4] It may be well to recall certain incontrovertible physical facts and established rules of law before entering upon the discussion of the evidence. This accident happened as the day was dawning, when it was neither dark night nor bright day. An artificial light in darkness or half darkness is visible at a long distance by one far from it, when one behind or near it can see a dark object by means of its rays but a short distance; and this is as true of a small or low artificial light as of a brilliant one. The light of a lantern as well as that of an automobile may be seen by one miles from it, while those behind or near it can see dark objects by means of its rays but a few feet. Again, an artificial light in steam and smoke illumines the steam and smoke, so that one can see and know that there is a light, when one at or behind the light cannot see through the steam or smoke and distinguish objects much nearer; so that the opportunity of Brotsky to see the headlight, and know it was approaching, was much better than the opportunity of the engineer or fireman to see him. It was the duty of the engineer and fireman to use reasonable care to see and to prevent injury to pedestrians that might be in the yards of the company, in the light of their knowledge that the workmen were accustomed to

pass through them to and from their labor. But it was not their duty to insure their safety, or in case the steam or smoke became so dense that they could not see whether or not there was any one on or near the track to stop their engine, or to go or send forward to ascertain the fact. The yard was the private property of the railroad company, and it had the right to operate it with reasonable care. On the other hand, the exercise of a greater vigilance to watch for and protect himself is the duty of one who enters or crosses the private yard of a railroad company, which has the right of way over and through it for its powerful locomotives and heavy trains. As Judge Adams said in Hart v. Northern Pacific Ry. Co., 196 Fed. 180, 185, 116 C. C. A. 12, 17, these are among propositions of well established law:

"(a) That a railroad track in active use is per se a warning of danger, and that any one is thereby admonished that a train is liable to pass over it any time. (b) That no one, whether passenger, licensee, or trespasser, can approach a railroad track so near as to be hit by a passing train without first both looking and listening to ascertain whether a train is approaching which might injure him. And a fortiori (c) that no one, whether passenger, licensee, or trespasser, can frequent or walk over a private railroad yard covered by many tracks, employed constantly for a variety of purposes, like through travel, switching, breaking up and making up trains, without scrupulously observing the precaution just alluded to, and otherwise exercising the utmost degree of vigilance in looking out for approaching engines and trains. Kansas City, Ft. S. & M. R. Co. v. Cook, 66 Fed. 115, 13 C. C. A. 364 [28 L. R. A. 181]; Garlich v. Northern Pacific Ry. Co., 131 Fed. 837, 67 C. C. A. 237; Chicago, Rock Island & Pac. Ry. Co. v. Baldwin, 164 Fed. 826, 90 C. C. A. 630. Great is his peril, and proportionately great should be his effort to protect himself therefrom. Patton v. Texas & Pacific Ry. Co., 179 U. S. 658 [21 Sup. Ct. 275, 45 L. Ed. 361]."

If at the time Mr. Brotsky approached the track his vision was obscured by steam or smoke, or his hearing by the noise of the southbound engines, so that he could not see or hear whether or not an engine was approaching from the south, it was his duty to keep off the track until the steam, smoke, and noise, which were but temporary, disappeared, so that he could be sure none was coming upon him. Chicago & Northwestern Ry. Co. v. Andrews, 130 Fed. 65, 73, 64 C. C. A. 399, and cases there cited. Thus it appears that the primary and greater duty was on the deceased to watch for the danger and protect himself against it, and not on the railway company; and the law is indisputable that if his failure to discharge that duty contributed to his injury the administrator of his estate cannot recover.

[2] And it was the duty of the trial court at the close of the evidence, at the request of counsel, to direct the finding by the jury upon each issue of fact upon which the evidence was undisputed, or so clearly preponderant, or of such a conclusive character, that the court would be bound, in the exercise of a sound judicial discretion, to set aside a contrary finding. Canadian Northern Ry. Co. v. Senske, 201 Fed. 637, 644, 120 C. C. A. 65, 72; Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Union Pacific R. R. Co. v. McDonald, 152 U. S. 262, 283, 14 Sup. Ct. 619, 38 L. Ed. 434; Delaware, Lackawanna & Western R. R. Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213.

Let us now examine the testimony in the light of these facts and rules of law. Kohen, a workman, testified that he met Brotsky in the yard on the morning of the accident at or near Eleventh street and saw the north-bound engine, that he was near enough to hear the bell if it was ringing, that if it was ringing he did not hear it, and that he did not remember whether it was ringing or not. Monroe, the fireman, testified that he rang the bell when he went north over Eleventh street, that he thought he continued to ring it all the time until he passed Fourteenth street, that he put in a fire before he reached Eleventh street, and, after he crossed it, he put on the injector, that when he was putting in two or three scoops of coal the bell would not ring, that the bell would not stop more than an instant at a time any way. Donaldson, one of the switchmen on the south end of the switch engine, a witness for the plaintiff, testified that the bell was ringing at Eleventh street, and that he did not remember whether or not it was ringing north of that point. Brannaman, the engineer on the switch engine, testified that the bell was ringing at and north of Eleventh street. Schroeder, the foreman, who was on the south footboard of the switch engine, testified that the bell was ringing; and Mummert, the hostler, who was sitting in the cab on the east side of the south-bound engine as it passed the switch engine, testified that its bell was ringing and that he saw it moving. This was all the material evidence on this subject. The legal presumption was that the fireman did his duty and rang the bell. The testimony of two witnesses, who had no duty regarding the ringing and no occasion to note it, that they did not remember whether it was ringing or not, furnishes no substantial evidence to sustain a finding that it was not rung, in the face of the legal presumption and the positive testimony of four witnesses, whose duties required them to know the fact, that it was rung, and the charge of negligence in failing to ring the bell should have been withdrawn from the jury. There was no substantial evidence to sustain it.

The statutes of Iowa require the whistle to be sounded 60 rods before a road crossing is reached, but provide that the sounding of the whistle may be omitted at street crossings within the limits of cities or towns, unless required by ordinance or resolution of the council thereof. Code Iowa 1897, § 2072. The place of the accident was within the limits of a city, the record contains no proof of any ordinance or resolution, the bell was rung, there was no duty to sound the whistle, and the failure to sound it was not actionable negligence.

The plaintiff alleged that it had long been the practice and custom of the defendant, in moving its switch engines in its yards and over the place where it struck Mr. Brotsky, to place a man or men on the approaching end of such engines to keep a lookout for and to warn him and other employés of the approach of such engines, and to warn those operating such engines of the proximity of persons on the tracks, and that the defendant failed to do so. No witness came to say that there had ever been any custom or practice to place a man or men on the approaching end of the switch engines at the place of the accident, or elsewhere in the yards, to keep a lookout for and warn em-

ployés of the approach of the engines, or to notify engineers of the proximity of persons in the yards. On the other hand, there was positive and uncontradicted testimony that there was no such custom. The evidence, in the most favorable view of it for the plaintiff, went no farther than to tend to show that the foreman and the two switchmen, when actively engaged in turning switches and handling cars during short movements, ordinarily rode on the footboard of the engine, from which it was most convenient for them to do their work, whether this was the footboard on the advancing or on the retreating end of the engine, that they had often ridden on the footboard of the advancing end at the place of the accident, that either footboard was a proper place for them, but that in long movements—and the movement the engine was making at the time of the accident was a long movement—they usually rode on the retreating end of the engine. There was also evidence that there was an angle cock within reach of a man on the north footboard of the engine and tender, by turning which the air could be so manipulated as to stop the engine, and the plaintiff insisted that it was negligence not to have a man on that footboard to turn this angle cock.

But the limit of the plaintiff's duty was to exercise ordinary care in moving its switch engine through its yards, and the burden was on the plaintiff to prove that it failed to use that degree of care. The best test of ordinary care is that care that ordinarily prudent and careful railroad operators commonly use under similar circumstances, and in the absence of evidence of that care it is such care as ordinarily prudent and careful persons would use under like circumstances. Moreover, the legal presumption is, in the absence of countervailing evidence, or of indisputable negligence, that the degree of care the defendant exercised was such as a prudent and careful person would exercise under like circumstances. No witness came to say that prudent railroad companies ordinarily placed a man on the advancing ends of their switch engines to look out for and warn pedestrians passing through their yards under such circumstances as this case discloses, or that prudent operators would do so. There was no testimony that prudent operators would, or that operators ever had, in like circumstances, placed a man on the approaching end of a switch engine to turn the angle cock and stop the engine, or to notify the engineer of the proximity of persons on the track. And the failure to do these things certainly was not clear or indisputable negligence. The employés who passed through the yard at the place of the accident did not come in crowds, but thinly scattered, and the primary duty was on them to protect themselves. The evidence on this question goes no farther than to tend to show that a man on the approaching end of the footboard could have seen a pedestrian on the tracks better than the engineer, and could by turning the angle cock have stopped the engine quicker, and this evidence was squarely contradicted. Admitting it to be true, however, it only proves that there was an extraordinary and unusual degree of care, that the company could have exercised, which might have prevented the accident. There is no proof, and no evidence from which a lawful inference may be deduced, that the

placing of a man on the footboard of the approaching engine, under the circumstances of this case, to warn employés of its approach, to notify the engineer of its presence, or to turn the angle cock, fell within the limits of ordinary care. The testimony was that the purpose and use of the angle cock was to open the air to the car behind the engine when one was there, and again to shut it off. There was no evidence that it was placed there to stop the engine, or that it was ever used for that purpose, although it could be used to effect that result.

The rule of the company placed the duty of looking out for pedestrians, warning them, and stopping and handling the engine, on the engineer and the fireman, and imposed no duty of that kind on the foremen or switchmen, during such a movement as resulted in this accident. The engineer, the fireman, and other witnesses testified that the engineer and fireman faithfully discharged their duty, and there was no witness to the contrary. The bell was rung; the headlight was burning. This watchfulness and these warnings constituted the exercise of ordinary care, and there was no substantial evidence that the failure to keep a man on the footboard of the approaching engine to look out for pedestrians, to warn them, to signal the engineer of their presence, or to stop the engine, constituted any failure of that degree of care, and for that reason these charges should have been withdrawn from the jury.

It was alleged and denied that the headlight was burning low, and that the failure to maintain a more brilliant light was negligence, which caused the accident; and it is specified as error that this issue was submitted to the jury. Donaldson, the switchman called by the plaintiff, testified that the atmosphere was steamy; that in the condition at the time of the accident the headlight of the north-bound engine would light 12 or 15 feet ahead of the tender, but that it could be seen farther by a man on the track; that the headlights were low; and as follows: "Q. What do you mean by that Mr. Donaldson? A. Well, the oil generally burns low at that time, and the wicks are short, as a general rule;" and on cross-examination that during the course of the night the oil in the headlight would be consumed to some extent, that he did not know the amount of oil in the lamp of the headlight at the time of the accident, nor the amount in it when it was lighted the evening before, that his duties as switchman did not require him to inspect the light or give any attention to it, that he did not at the time of the accident, or within a few minutes after, inspect the headlight, and that he was not able to state of his own knowledge its condition at the time of the accident. The only effect of this testimony was that headlights generally consume oil during the night and burn low in the morning; but he did not know the condition of the headlight in question at the time of the accident, and this testimony may be laid aside as immaterial, and yet it was all the evidence that the headlight was not maintained with ordinary care. On the other hand, Enochsen testified that the object of a headlight on the tender was as a monitor for the men working in the yards, that as ordinarily burning it would light track 60 feet, that the engineer could see farther with a high light than with a low light, but that the latter would be visible to one in the yards about as far as the former. Brannaman, the engineer, who used and

was interested in the light, testified that it was particularly good, but that it would not penetrate steam. Monroe, the fireman, testified that he always took particular pains with the headlights on this engine, and that there was no better headlight in the yards than the one on its tender. Schroeder, the foreman, testified that he noticed the headlight after the accident, and it was burning good; and Mummert, the hostler, testified that when he was at the oilhouse, which is several hundred feet north of the place of the accident, and the switch engine was at or below Eleventh street, he saw this headlight as the engine was coming north. There was no substantial evidence here that the defendant was guilty of any lack of ordinary care in the maintenance of this headlight, and the jury should have been instructed to return a verdict for the defendant.

Let the judgment be reversed, and the case be remanded to the court below, with instructions to grant a new trial.