ERIE R. CO. v. GALLAGHER.

(Circuit Court of Appeals, Second Circuit.   December 11, 1918.)

No. 107.

APPEAL AND ERROR ☞1062(3)—TRIAL ☞145—ALLEGATION NOT PROVED—
REFUSAL TO WITHDRAW FROM JURY.

A refusal to grant a specific request to withdraw from the jury one of
several specific charges of negligence is fatal error, if there is no substan-
tial evidence to sustain the charge and it is not possible to determine on
which of the issues the jury based its verdict.

In Error to the District Court of the United States for the South-
ern District of New York.

Action at law by Mary J. Gallagher, administratrix of Charles G.
Gallagher, deceased, against the Erie Railroad Company.   Judgment
for plaintiff, and defendant brings error.   Reversed.

This cause comes here on writ of error to the United States District Court
for the Southern District of New York.

This is an action brought by defendant in error who was plaintiff below,
and is hereinafter called plaintiff, to recover damages in the sum of $40,000
for causing the death of Charles Gallagher.

The action is brought under the federal Employers' Liability Act.

The defendant at the time of his death was employed by plaintiff in error,
hereinafter called defendant, as a watchman, and in the performance of his
duties was ordered by defendant to go on floats attached to the bridges of Pier
8, Jersey City, and seal freight cars thereon.

It is alleged that the deceased, after having sealed the cars as directed, and
while attempting to return from one of the floats to his post on the bridge,
and while still in performance of his duties and without any fault on his part,
was precipitated from the float connected to the bridge into the river between
the float and the bridge and was drowned.   The accident was due, it is al-
leged, to a sudden release of the float from the bridge by the agents and
employés of the defendant without giving any warning.   And it is averred that
this accident was caused solely by reason of the carelessness, recklessness,
and negligence of the defendant.

It is alleged that this accident was further caused by reason of the negli-
gence of defendant, in that it failed to provide a safe place in which to work,
as well as failed to furnish any lights on the float, and failed to provide a
sufficient light on the bridge, and failed to provide the deceased with a lamp,
searchlight, or other means of light.

The defendant moved to dismiss the complaint at the end of the plaintiff's
case.   The motion was denied.   It was renewed at the end of defendant's
case, and it was also moved that the court direct a verdict for defendant.
Both motions were denied.   The case was submitted to the jury, and a verdict
was returned for the plaintiff in the sum of $7,000.

Stetson, Jennings & Russell, of New York City (William C. Can-
non, of New York City, and Theodore Kiendl, Jr., of Brooklyn, N.
Y., of counsel), for plaintiff in error.

Lawrence B. Cohen, of New York City (Jacob Shientag, of New
York City, on the brief), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above).   The able
and experienced judge who presided at the trial of this case instructed

the jury very fully in a carefully prepared charge which covers 18 printed pages in the transcript of the record. The jury has given the plaintiff a verdict which is moderate in amount. Nevertheless we think it necessary to send this case back for a new trial.

The negligence with which the defendant is charged consists in two alleged omissions:

1. Failure to warn the deceased of the sudden release of the float from the bridge.

2. Failure to furnish sufficient light to enable the deceased to work in safety at the place where the accident occurred.

It was admitted in this court that no warning of the release of the float was given. At the trial the defendant introduced testimony to show that the Lehigh Valley and the D. L. & W. companies, engaged in similar operations, do not give warnings when a float is about to be released, but a man has to look out for himself. The following excerpt from the testimony tells its own story:

"Q. How does he know what is going to happen? A. He has two eyes.

"Q. Suppose he is working in the back of the boat, up very near the bumper? A. The way they work everybody looks out for' himself.

"Q. The boat does take a very violent drop when she leaves the toggle pins? A. Naturally; yes, sir.

"Q. If, at high tide, she takes, you say, a bigger drop than at low tide? A. Yes, she would take a bigger drop at high tide.

"Q. And she will take a drop sometimes as much as six feet at high tide? A. More than that.

"Q. How much is the highest you know of? A. Eight to ten feet. * * *

"Q. You say a man should look out for himself? A. Yes, sir. * * *

"Q. Suppose it is a watchman the first night he is on there and doesn't know anything about it? A. He stands on his own responsibility.

"Q. That is the way you work it? A. Yes.

"Q. That applies to the crew? A. Everybody. * * *

"Q. If a float is going to drop six or eight or ten feet, and he doesn't know the drop is going to come, he is in danger, isn't he? A. If he don't know it, he has no business being there.

"Q. He is in danger when that boat is going to drop, isn't he? A. If he is in the way, yes."

The jury were properly instructed and at great length on this branch of the case and were charged, among other things, that if they were reasonably satisfied from the evidence that it was the duty of defendant to give notice to Gallagher before the release of the float from the bridge, and negligently failed to give notice, that would entitle Mr. Gallagher's administratrix to damages; and that the burden was on the plaintiff reasonably to satisfy them that it was the duty of defendant to give that notice.

The defendant asked the court to charge:

"You cannot find any negligence on the part of defendant upon the ground that no warning was given that the float was to be released from the bridge."

The request was refused and exception taken. This was not error.

We come now to the second allegation of defendant's negligence, in that it failed to furnish sufficient light to enable the deceased to work in safety. The bridgeman was examined as to the lights on the bridge at the time of the accident. His testimony was as follows:

"Q. Were there any lights on the bridge at that time? A. Yes, the whole business.

"Q. Now, where were the lights, if you remember, Mr. Stanton? A. Right over the entrance to the bridge—on the bridge work.

"Q. And you now distinctly remember that the lights were lit there? A. Sure.

"Q. Did you have any difficulty in seeing the edge of the bridge and the floats on bridge 4, or only bridge 4, on that night? A. No.

"Q. Did you have any difficulty in seeing at that place on any night that you worked there? A. See what?

"Q. Were the lights sufficiently illuminated to see what you were working at at that place? A. Sure; they might once in a while go out—something might happen to the dynamo.

"Q. On this night they didn't go out? A. No.

"Q. Was it necessary for the bridgeman to have lights working on bridge 4 and the other bridges on any night? A. Yes, sure.

"Q. Was it possible for the bridgemen to perform their duties without lights? A. Well, that I could not say.

"Q. You don't know? A. No.

"Q. It would make it hard, would it not? A. Yes, likely to get killed; that's about all."

Another witness, who was a floatman on the railway company's tug which was to pull out the float on which Gallagher was at work, and who was standing on the bridge about 15 feet from the point where the bridge met the float when the accident occurred, saw and recognized Gallagher when he was halfway down the float 100 feet away. He testified as follows:

"Q. And Gallagher was halfway down that float, or about 100 feet away from you, was he? A. Yes, sir.

"Q. And you saw him working? A. Yes, sir.

"Q. Did he have a light? A. I didn't see a light.

"Q. Were there any lights on the float? A. No, there were no lights on the float, but lights on Dock 8.

"Q. And were there lights on the bridge? A. Yes, sir; there was a light there.

"Q. Those lights were right over your head while you were standing there, weren't they? A. Yes, sir.

"Q. And you could see plainly a distance of 100 feet, so that you could recognize Gallagher? A. Yes, sir.

"Q. From the time you first saw him nailing this door, you say after he had finished that job he came walking toward you? A. Yes, sir."

In approaching the witness he was, of course, approaching the light on the bridge. One other witness, a deck hand on the tugboat, who, when the accident happened, jumped from the tugboat upon the bumper end of the float and then ran to the toggle end, was asked as to the lights, but testified as to the persons he saw and recognized on the bridge while he was standing on the float. There is not in the record any other evidence in the plaintiff's case regarding lighting facilities. The defendant by the uncontradicted testimony of seven witnesses established the fact that there was a cluster of four 100-candle power electric lights covered by a reflector about 15 feet from the place of the accident and that the lights were burning. The defendant at the close of the case stated that he had three other witnesses who, if called to the stand, would testify that the lights on the bridge were lit at the time of the occurrence of the accident and that

no system of warning employés of the release of the floats was used by defendant at that time. Counsel for plaintiff then conceded that if the witnesses were called they would so testify. There is absolutely no testimony in the case from any witness that the light was insufficient.

Counsel for defendant asked the court to charge:

"You cannot find any negligence of the defendant upon the ground that there was not sufficient light at the place where deceased fell into the water."

The request was refused and an exception was taken. The refusal to give the request was error.

The rule is well established that a refusal to grant a specific request to withdraw from the jury one of several specific charges of negligence is fatal error if there is no substantial evidence to sustain the charge. The reason is that the appellate court cannot know but that the jury may have found its verdict upon the baseless charge. Wilmington Mining Co. v. Fulton, 205 U. S. 60, 27 Sup. Ct. 412, 51 L. Ed. 708; Deserant v. Cerillos Coal R. R. Co., 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127; Buckeye Cotton Oil Co. v. Sloan, 250 Fed. 712, —— C. C. A. ——; Chicago, St. Paul, M. & O. Ry. Co. v. Kroloff, 217 Fed. 525, 133 C. C. A. 377.

Judgment is reversed, and a new trial ordered.