### BIRKESTRAND v. CHICAGO, M. & ST. P. RY. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. July 26, 1921.)

No. 5747.

1. **Railroads ⚓278(3)—Shipper falling from car held guilty of contributory negligence.**

   A shipper of live stock who, while himself moving car to the railroad chute according to custom, went upon the top thereof in the dark without a lantern and was injured by walking off while going the length of the car to release the brake, *held* guilty of gross negligence as matter of law, barring recovery from the railroad.

2. **Trial ⚓141—Court may direct verdict where evidence is undisputed.**

   A court may withdraw a negligence case from the jury and direct a verdict for the plaintiff or the defendant where the evidence is undisputed and of such a conclusive character that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict returned in opposition to it.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action by W. J. Birkestrand against the Chicago, Milwaukee & St. Paul Railway Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

C. G. Lee, of Ames, Iowa (Lee & Garfield, of Ames, Iowa, on the brief), for plaintiff in error.

Charles R. Sutherland, of Chicago, Ill. (Hughes, Sutherland & O'Brien, of Cedar Rapids, Iowa, on the brief), for defendants in error.

Before HOOK and STONE, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The plaintiff, a farmer and stock raiser, applied to the station agent of the railway company, at Cambridge, Iowa, for two cars to ship some sheep from Cambridge to Chicago, Ill. On January 20, 1919, he called at the station, and selected two cars on the side track in the yards at Cambridge, some short distance from the chute or depot provided for the loading of stock. He alleges that, in violation of section 2116 of the Iowa Code, the railway company failed and refused to switch the cars to the chute or depot, and directed him to perform this service; that he was wholly inexperienced and unfamiliar with the proper methods of such work, which facts were

---

⚓For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

known to the defendants, and they neglected to instruct him how to perform such work; that the railway company had neglected to properly light the depot grounds and yards at the time and place plaintiff was required to perform such services; and that while performing such work, and exercising ordinary care in attempting to move the cars, as directed by the defendants, he fell from a car and was seriously injured.

The answer, in addition to a general denial, pleaded that the accident was due wholly to plaintiff's negligence, and also pleaded that prior to the accident he had executed a shipper's contract, and it, among other provisions, contained one "that the shipper would at his own risk load said live stock."

There was a trial to a jury, and at the close of plaintiff's evidence the court, on motion of defendants, directed a verdict in their favor.

The testimony of the plaintiff establishes the following facts: That during the afternoon of January 20, 1919, he had brought his sheep from his farm to the stockyards of the defendants near its station in Cambridge. He placed the sheep in the stockyards, and was told by the station agent to select his cars, a number of stock cars being on the stockyards track at the time. One car was at the chute, which had been assigned to a Mr. Inglis. The other cars were west of the stockyards. He selected the first car west of the one that was at the chute, and another that stood the fourth car from the chute. Having selected his cars, he went to the station agent and gave him the number of the cars, and the agent had the cars billed, and thereupon the plaintiff executed the live stock contract, which contained the provision set out in the answer. He was told to get a pinch bar to be used for starting or moving the cars. He then went back to the cars, bedded them, and went home, as he did not desire to load until late in the evening. He had a talk with Mr. Inglis, another shipper, and secured the pinch bar for use in moving the cars. Mr. Inglis told him that he would load his car right after supper, and suggested that he come in and they would help each other to load their cars, but, owing to the bad roads, plaintiff did not arrive at Cambridge until after 8 o'clock. At that time the Inglis car had been loaded, but was still standing at the chute. He was accompanied by his son and a hired hand when he came in the evening. They shoved the Inglis car further east, then loaded the first car, after moving it to the chute, and switched it until it bumped against the Inglis car. The second car was about 300 feet from the chute. It was a dark night, but the plaintiff had a lighted lantern with him. In order to move the second car, it was necessary for him to go to the top of the car in order to set the brake when it reached the chute. He saw that the brake was at the east end of the car, but ascended to the top of the car on the west end, and did not take the lantern with him. After he had reached the top of the car, he started to walk lengthwise to the east end of the car where the brake was, and, it being dark, he walked off the car and suffered the injuries complained of. He also testified that he had on three former occasions made shipments of sheep over the defendant's railroad, had helped others to load their

cars, and knew that it was customary for shippers to move and load their own cars.

The court held that the plaintiff's evidence showed that it was his own negligence in going on the car on a dark night, without a lantern, although he had one at the time, and therefore he was not entitled to recover.

He knew that the place where the cars stood and where they were to be loaded was not lighted; that the brake was on the east end of the car yet he climbed to the top of the car on the west end; although he had a lighted lantern, he did not take it with him when he went on the car, although he knew the night was dark, and then walked from the west end of the car to the east end where the brake was.

[1] Upon these facts there is no room for a difference of opinion among reasonable men that he was guilty of gross negligence, which alone caused him to fall off the car.

[2] While undoubtedly questions of negligence in actions like this are ordinarily for the jury under proper directions as to the principles of law by which they should be controlled, it is well settled by the decisions of the Supreme Court of the United States and this court, as well as all other national courts, that a court may withdraw a case from the jury and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed and is of such a conclusive character that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict returned in opposition to it. Phœnix Insurance Co. v. Doster, 106 U. S. 30, 32, 1 Sup. Ct. 18, 27 L. Ed. 65; Schofield v. Chicago & St. Paul Ry. Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125, 29 L. Ed. 224; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Claus v. Northern Steamship Co., 89 Fed. 646, 32 C. C. A. 282; Chicago, Rock Island & Pacific R. R. v. Baldwin, 164 Fed. 826, 90 C. C. A. 630; Chicago, etc., Railway v. Kroloff, 217 Fed. 525, 529, 133 C. C. A. 377.

The court committed no error in directing a verdict for the defendant, and the judgment is affirmed.