**CHRISTIAN v. BOSTON & M. R. R.**
**No. 152.**

Circuit Court of Appeals, Second Circuit.
Jan. 23, 1940.

104

Whalen, McNamee, Creble & Nichols (by Charles E. Nichols) of Albany, N. Y., for appellant.

Arthur B. Lanphier, of Albany, N. Y., for appellee.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The plaintiff brought action under the Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the death of her husband, a locomotive engineer in the defendant's employ. The case went to a jury, and there was a verdict for the plaintiff. On appeal the defendant argues that the proof of negligence was not sufficient to warrant submission of the case to the jury.

Christian's death occurred as a result of the derailing of his locomotive near East Deerfield, Massachusetts, in the early morning of September 20, 1938. The defendant operates as part of its system a stretch of single track running from its yard at East Deerfield to a junction a mile to the west. Half a mile west of the yard a gravel road with a surface of stone dust crosses the track. Immediately south of the crossing the road climbs a fairly steep hill. It had been raining on the 19th, and the rain continued through the night. Stone dust and gravel were washed down the road and deposited on the crossing, covering the rails to a depth of several inches. This obstruction brought about the accident. There had been no obstruction three or four hours earlier, for a train had then passed the crossing without trouble. Christian's locomotive was at the head of a train of 78 freight cars, most of them loaded, and there was a pusher locomotive in the rear. The train left the yard shortly before 4 A. M., moving west. It had picked up speed of 15 miles an hour when the head locomotive hit the obstruction at the crossing. The locomotive, tender and three front cars were completely derailed. The fourth car, partly derailed, stopped at the crossing. The locomotive was found near the track, about 150 feet west of the crossing and beyond a ravine over which the track ran; the tender and cars were nearby. Members of the train crew felt the brakes go on suddenly, the train coming to a stop a moment later. Christian suffered injuries from which he died.

The plaintiff put forward two charges of negligence by the defendant, and both were submitted to the jury over the defendant's objection. The first was that the defendant had not used due care to keep the crossing in safe condition. For the plaintiff a number of witnesses testified that prior to the accident the road on the slope south of the track was rough and rutty, that there were no ditches or drains to carry water from it, that the road was no longer in use, and that several times they had noticed gravel on the track at the crossing, washed down the road by rains and covering or nearly covering the rails. Witnesses for the defendant contradicted the plaintiff's witnesses as to most of these matters. The defendant also offered evidence tending to show that careful inspection of the track was maintained. On the evidence an issue of fact was raised as to the condition of the road and crossing prior to the accident. If the condition testified to by the plaintiff's witnesses was true, reasonable men might find that the defendant had not taken due precautions to keep its track clear of obstructions. On the other hand, they might find that the defendant had done all that was fairly required of it. The judge was right, we conclude, in submitting

to the jury the issue of negligence in maintenance of the track at the crossing.

The second charge of negligence urged by the plaintiff was that the engineer on the pusher locomotive had carelessly failed to turn the cut-out cock on the air brake system so as to prevent air from passing from his reservoir into the train line, and that such failure contributed to the accident by causing the brakes to be released and the train to be pushed forward. The judge submitted this issue also to the jury. In an air brake system a locomotive has an air pump and reservoir which connect with the train line, the latter consisting of a pipe running the length of the train and connected by hose between cars. Discussion of the mechanism governing the brakes is unnecessary, other than to say that maintenance of air pressure in the train line keeps the brakes released and that reduction of air pressure sets the brakes against the wheels of the cars. In normal operation the brakes will be applied by the engineer reducing pressure in the train line, slowly or suddenly according to his judgment. They will also be applied by a rupture in the train line, such as the uncoupling of a hose connection, and the application will be sudden in such a case. When a pusher locomotive is attached to a train, it is the practice for the engineer on it to turn a cut-out cock, preventing the passage of air from his reservoir to the train line and putting control of the brake system with the engineer in the head locomotive.

The only evidence produced by the plaintiff in support of the alleged failure of the engineer on the pusher locomotive to turn the cut-out cock was the testimony of a retired engineer that if the hose connections were ruptured at the crossing, the brake system should have brought the train to a stop in 15 feet. From the fact that the head locomotive did not come to a stop for 150 feet beyond the crossing, this witness concluded that the cut-out cock on the pusher locomotive had not been turned to the closed position and that the pusher had released the brakes. These opinions amounted to nothing. For one thing, the plaintiff's own evidence showed that the upgrade was only $^{65}/_{100}$ths percent, and the expert conceded that the upgrade assumed by him, 7 percent, was an important factor in his estimate. He evidently misunderstood the hypothetical question put to him and

took the degree of curve, 7 percent, for the degree of grade, $^{65}/_{100}$ths percent. Again, while the evidence indicated that it was a rupture in the hose connections that caused the brakes to set at or shortly after the derailing of the head locomotive, there was no proof that the hose connections were ruptured when the locomotive was directly on the crossing. It is equally possible that they remained intact until the locomotive was a distance beyond the crossing. Although derailed at the crossing, the locomotive and head cars did not at once leave the ties and roadbed. Finally, the opinion that the cut-out cock on the pusher had not been turned was retracted by the witness later when he said that on rupture of the hose connections the brakes would be applied and would remain applied whatever the position of the cut-out cock on the pusher. This is patently true; with a rupture in the train line hose, the hose being much larger than the opening from the pusher to the train line, it would be an utter impossibility for the pusher to build up pressure in the train line and release the brakes.

There was then no evidence tending to show that there was negligence in operation of the pusher locomotive. The evidence was all the other way, that the engineer in charge of that locomotive turned the cut-out cock before leaving the yard, that with the hose connections broken it would have made no difference whether he had or had not turned it, and that when the brakes went on the train came promptly to a stop. The judge was in error in submitting to the jury, over the defendant's objection, the issue of negligence by the engineer on the pusher locomotive.

The error requires reversal of the judgment. The verdict for the plaintiff was a general one. For all we know, the jury found its verdict on the claim for which there was no evidence. Where two issues of negligence are sent to the jury and the verdict for the plaintiff is general, the judgment must be reversed if there was no evidence in support of one of the issues. Wilmington Star Mining Co. v. Fulton, 205 U.S. 60, 27 S.Ct. 412, 51 L.Ed. 708; New York, N.H. & H. R. Co. v. Murphy, 2 Cir., 204 F. 420; Erie R. Co. v. Gallagher, 2 Cir., 255 F. 814.

The judgment will be reversed and the case sent back for a new trial.