# DESERANT *v.* CERILLOS COAL RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 269. Argued April 27, 1900.—Decided May 28, 1900.

The act of Congress of March 3, 1891, concerning coal mines, makes three requirements: (1) Ventilation of not less than fifty-five feet of pure air per second, or 3300 cubic feet per minute for every fifty men at work, and in like proportions for a greater number; (2) proper appliances and machinery to force the air through the mine to the face of working places; (3) keeping all workings free from standing gas; and if either of these three requirements was neglected, to the injury of the plaintiff's intestates, the defendant was liable.

The act does not give to mine owners the privilege of reasoning on the sufficiency of appliances for ventilation, or leave to their judgment the amount of ventilation that is sufficient for the protection of miners.

It does not allow standing gas, but requires the mine to be kept clear of it, and if this is not done the consequence of neglecting it cannot be excused because some workman may disregard instructions.

It is the master's duty to furnish safe appliances and safe working places, and if the neglect of this duty concurs with that of the negligence of a fellow-servant, the master is liable.

On the issues made, and on the evidence, and regarding the provisions of the act of Congress, the instructions given by the trial court to the jury were erroneous.

THE case is stated in the opinion of the court.

*Mr. Neill B. Field* for plaintiff in error. *Mr. F. W. Clancy* was on his brief.

*Mr. Robert Dunlap* for defendant in error. *Mr. E. D. Kenna* and *Mr. R. E. Twitchell* were on his brief.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This action is consolidated of three, brought by plaintiff in error, who was plaintiff in the court below and may be so called

here, as administratrix of the estates respectively of her husband, Henri Deserant, and her sons Jules Deserant and Henri Deserant, Jr.

The actions were for damages for the deaths of her said intestates by an explosion in a mine owned by defendant, and which explosion was alleged to have been caused by the negligence of plaintiff in error. The action was based upon a statute of New Mexico, which gives an action for damages to the personal representatives of a person whose death is caused by the wrongful act of another, if the person causing the injury would have been liable to an action for damages if death had not ensued.

There were two trials, both by jury, in the District Court of the Territory. The first resulted in a verdict and judgment for plaintiff. They were reversed by the Supreme Court of the Territory. 49 Pac. Rep. 807. The second resulted in a verdict and judgment for defendant. They were affirmed by the Supreme Court of the Territory. 55 Pac. Rep. 290. This writ of error was then sued out.

There is no dispute about the explosion or that the deaths of plaintiff's intestates were caused by it. The dispute is as to the cause of the explosion and the responsibility of defendant for it.

The evidence presents long and elaborate descriptions of the mine, with its "slopes, air shafts, entries, cross cuts, air courses. conduits and break throughs."

We do not think that it is necessary to repeat the descriptions. There is no controversy about them. The issue between the parties is as to the amount and sufficiency of ventilation, its obstruction, the accumulation of explosive gases, their negligent ignition, whether by a fellow-servant of plaintiff's intestates or by a representative of the defendant, making it liable, or whether the explosion was of powder accidentally ignited.

The method of ventilation was by machinery causing a circulation of air through the mine and up to the face of the working places, for the purpose of rendering harmless or expelling the noxious gases.

It is contended by plaintiff that the machinery was insufficient for that purpose, the employés of the defendant were in-

efficient and negligent, and that the air shafts had been permitted to become obstructed, whereby gases accumulated, and stood in the mine and exploded on the 27th of February, 1895, causing the deaths of plaintiff's intestates.

The means of ventilation was a fan at the entrance of the mine, which by its revolutions exhausted the air in the mine, and outside air rushed in and through the passages of the mine, and was directed where desired by means of curtains called " brattices."

It is claimed there were defects in those appliances, whereby there were leaks in the circulation of the air, and besides that water had been allowed to accumulate in the fourth left air course, which so interrupted the quantity of air which passed into room 8 of the fourth left entry that the air did not go to the face of that room, but feebly passed around the brattice at a distance of twelve or fourteen feet, thus permitting the accumulation of a dangerous body of gas, until it passed beyond the danger signals, which may have been put into the room by the fire boss, and that Donahue, the day foreman, and Flick and Kelly, all miners, entered the room on the day of the explosion, with naked lamps, and ignited the gas before they saw or had an opportunity to see the danger signal. The employés of the mine consisted of miners, rope riders, mule drivers, track men and " company men." The latter were paid by the day, and worked under the order and immediate supervision of the foreman or pit boss, while the miners were paid by the ton, and were subject to general supervision by the foreman. Besides these, there was a mine superintendent, day foreman or pit boss, night foreman or pit boss, day fire boss and night boss. There was also a mine inspector, who lived in Kansas, and periodically visited the mine and other mines owned by defendant.

It is claimed that the mine foreman and fire bosses knew of the gas in room 8, and that the deceased miners did not know it, nor have means of knowing it.

The mine was inspected day and night respectively by the day and night fire bosses, and it was the duty of each to advise each miner as he came in of the condition of his working place, and no miner was permitted into the mine to work until so advised.

The gas is explosive when mixed with certain proportions of atmospheric air. It is lighter than air, and, therefore, dispelled by a current of air, and this was the means necessary to be employed to disperse the gas. The gas when it explodes moves against the opposing current of air. In other words, expends its force in the direction from which the air comes.

On Sunday night Kilpatrick, the foreman, discovered enough gas in room 8 to crack his safety lamp, but he did not regard it as sufficient to mark the place dangerous.

On Monday morning (the explosion was on Wednesday) the day fire boss found gas in room 8, and put a danger mark above the last cross cut, but did not go back to the room again, although he knew that it was one of the worst rooms in the mine for gas. He testified that he considered the danger mark sufficient.

On Monday night before the explosion, Ray, the night fire boss, was at the face of room 8, and found no fire marks, but found a little gas, and put fire marks in the room. He inspected the mine on Tuesday, but did not visit room 8.

Donahue, mine foreman, Flick and Kelly, two "company men," were killed by the explosion, and their bodies were found in or near room 8.

The conclusion, which plaintiff claimed to be established by the evidence, is that Flick and Kelly went with Donahue, under whose direction they worked, into room 8 with naked lights, and that an explosion was caused by the gas in the room coming in contact with the lights.

The defendant, on the contrary, contended that the "explosion was of some kind or other at or in the neighborhood of room 16 in the fourth left entry of the mine, where the deceased were working as coal miners." It is claimed that the cause of the explosion is altogether of conjecture and surmise, and that the greatest evidence or effect of explosion and fire appeared in the neighborhood of rooms 16 and 17, in the entry way thereabout, and that some powder cans were found exploded, and coal dust was found coked on some of the pillars on the back of a car, and a car loaded with coal was moved several feet off the track. It is hence conjectured that the explosion

was caused by some negligent or accidental ignition of powder which instantly set fire to the coal dust, which more or less impregnated the air and the entry ways, and of particles of gas which might be found in the hollows and crevices; so that death would be caused by concussion, or by the after damp caused by the explosion. Or it is conjectured again that the explosion might have been caused by some miner, while working, suddenly striking a seam or body of gas, which was ignited by his light, and thus ignited powder near at hand.

At the close of the testimony the plaintiff and the defendant asked for peremptory instructions for their respective sides, which were refused.

The assignments of error are based on exceptions to evidence and on exceptions to instructions.

In passing on the case the Supreme Court of the Territory said that it was "unnecessary for us to consider the objections urged to the instructions given by the court below. In our opinion they were all in favor of the plaintiff, as the court should have granted the motion of the defendant, and instructed the jury to find the defendant not guilty."

In support of this conclusion it stated the theory of the plaintiff to be that the explosion was caused by an "accumulation of water previous to the explosion in a low place in the fourth left air course, a sufficient quantity of pure air was not going to the face of the workings in the fourth left entry to remove and expel the noxious gases; that Kelly and Flick, who were company men — that is, men who were paid by the day and not according to what work they did — acting under instructions from Donahue, the day pit boss, went with him or by his direction into room 8 to remove a railroad track, carrying naked lights, and that such lights set fire to the gas which had accumulated there by reason of the insufficiency of air, and caused the explosion. This theory is purely speculative, and is not supported by the evidence. It cannot be positively proved what was the initial point of the explosion or what caused it. In fact, the evidence goes to show, from measurements taken at various times by the superintendent of the mine, the pit boss and the United States inspector, that sufficient air was going through the fourth left

air course and mine to make it safe.   Indeed, the evidence goes further, and shows that after the explosion and on the day of the investigation by the coroner's jury, and while much of the debris caused by the explosion was still in the fourth left air course, a sufficiency of air was passing through it over the water and debris through the low place, which was claimed by the plaintiff to have been obstructed by water, for the proper ventilation of the entry and its rooms and the expulsion of all harmful gases, and for the men and animals working there at the time of the explosion.   There is no evidence that the condition of the fourth left air course was the direct or proximate cause of the explosion, and for the plaintiff to recover this must be proved by a preponderance of the evidence."

The court also held that Flick, Kelly and Donahue were fellow-servants of the deceased ; therefore, if the contention of the plaintiff was true, that the gas was ignited by their negligence, the defendant had no cause for action.

We have read the evidence, and we cannot concur with the Supreme Court of the Territory that the trial court "should have granted the motion of the defendant, and instructed to find the defendant not guilty."   It was for the jury to determine from the evidence the place of the explosion and its cause, and what, if any, negligence the defendant was guilty of, and the evidence offered on the issues required the submission of those questions to the jury.

The effect of the act of Flick, Kelly and Donahue we will consider hereafter.

The trial court, in giving instructions to the jury, read section 6 of the act of Congress of March 3, 1891, which is as follows :

"By section 6 of an act of Congress, approved March 3, 1891, c. 564, 26 Stat. 1104, it is provided as follows :

"'SEC. 6. That the owners or managers of every coal mine at a depth of one hundred feet or more shall provide an adequate amount of ventilation of not less than fifty-five cubic feet of pure air per second, or thirty-three hundred cubic feet per minute, per every fifty men at work in said mine and in like proportions per a greater number, which air shall by proper

appliances or machinery be forced through such mine to the face of each and every working place so as to dilute and render harmless and expel therefrom the noxious or poisonous gases, and all workings shall be kept clear of standing gas.'"

The court then instructed the jury as follows:

" If, therefore, the jury believe from the evidence that the defendant, the Cerillos Coal Railroad Company, was operating a coal mine at a depth of more than one hundred feet below the surface of the earth, and that the plaintiff's intestates respectively were employed by the defendant in the operation of said coal mine, it was, by reason of said act of Congress, the duty of the defendant to provide an adequate amount of ventilation of not less than thirty-five cubic feet of pure air per second and thirty-three hundred cubic feet per minute for every fifty men who worked in said mine, which air should have been, by proper appliances or machinery, forced through such mine to the face of each and every working place therein, so as to dilute and render harmless and expel therefrom the noxious or poisonous gases, and all workings of such mine should have been kept clear of standing gas in dangerous quantities; and if the jury believe from the evidence that the defendant, the Cerillos Coal Railroad Company, failed or neglected to provide an adequate amount of ventilation so as to dilute and render harmless and expel from the said mine the noxious poisonous gases which were generated therein, or to keep the working places of said mine clear of standing gas, such failure on the part of the defendant 'may be considered by the jury as evidence of negligence on the part of the defendant.

\* \* \* \* \* \* \* \*

" 9. Negligence is defined to be the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or the doing something which a prudent and reasonable man would not do. It must be determined in all cases by reference to the situation and knowledge of the parties and all the attending circumstances. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit

or employers of laborers therein. All occupations producing articles or works of necessity, utility or convenience, may undoubtedly be carried on and competent persons familiar with the business and having sufficient skill therein, may properly be employed upon them, but in such cases where the occupation is attended with danger to life or limb, it is incumbent on the promoters thereof, and the employers or others thereon, to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution, and for any negligence in this respect from which injury follows to the persons engaged, such promoters and employers may be held responsible and mulcted to the extent of the injury inflicted, if any. Occupations, however important, which cannot be conducted without necessary danger to life, body or limb, should not be prosecuted at all without reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition of their pursuit without such safeguards. Indeed, it may be laid down as a legal principle that in all occupations attended with great and unusual danger, there must be used all appliances readily attainable known to science for the prevention of accidents, and that a neglect to provide such readily attainable appliances, and to keep the same in fit and suitable condition, will be regarded as proof of culpable negligence.

"10. I charge you, gentlemen, that it is the duty of the master to use reasonable care and diligence to provide a reasonably safe place in which his servants shall perform their respective duties, and also to use reasonable care and diligence to provide reasonably safe appliances for the protection of his servants, and to use reasonable care and diligence to keep such appliances in a reasonably safe condition for the protection of his servants; and the master cannot, by the delegation of any part of his duty to an agent, or servant, relieve himself of responsibility for injuries to his servants arising from the neglect of this duty. Any agent or servant of the master, appointed by him for the purpose of looking to the safety of such appliances without regard to the rank or station of such agent, or servant, is the representative of the master for such purpose,

and the negligence of any such agent or servant in such matters is, in contemplation of the law, the negligence of the master, and the master is liable for any damage occasioned thereby.

"11. Although you may believe from the evidence that the fellow-servants of the deceased by their negligence contributed to the bringing about of the explosion in which deceased were killed, yet, if you also believe from the evidence that the negligence of defendant also contributed to the same result, you must find a verdict in favor of the plaintiff, unless you believe from the evidence that plaintiff's intestates, or one of them, knew, or had means of knowledge, of such negligence of defendant, and notwithstanding such knowledge, or means of knowledge, continued to work in the mine of defendant.

"12. The law requires that the defendant shall keep the workings in its mine clear of standing gas, and if you believe from the evidence the defendant failed to keep the workings in its mine clear of standing gas, and that such failure contributed to the deaths of the deceased, then you are justified in believing defendant guilty of negligence and you must find a verdict in favor of the plaintiff, unless you believe from the evidence that the plaintiff's intestates or one of them knew of the existence of such gas and continued to work in the mine of defendant with such knowledge.

"13. If the jury believe from the evidence that the plaintiff's intestates knew or had reason to know that dangerous bodies of gas were permitted to accumulate in the open places of defendant's mine and to remain for a period of thirty-six hours or more, without any effort on the part of the agents and the servants of defendant to move the same, and that no precautions against the explosion of such gases were accustomed to be taken except to mark the open place were such gas might be with a danger mark, and plaintiff's intestates, notwithstanding such knowledge or means of knowledge, continued to work in said mine, the plaintiff's intestates thereby assumed the risk incident to such method and cannot recover if their fellow-servants ignited such gas by going over or disregarding such fire mark.

"14. If you believe from the evidence that the explosion originated in room 8 of the fourth left entry of the mine in consequence of the accumulation in said room of a body of dangerous gas, merely guarded by a fire mark or danger signal for thirty-six or forty-eight hours before the explosion, and that plaintiff's intestates did not consent or agree to work in said mine with places dangerous because of gas merely guarded by fire marks or danger signals for thirty-six or forty-eight hours, then plaintiff is entitled to recover in each case, although you may also believe that said body of dangerous gas was ignited by the negligence of fellow-servants of plaintiff's intestates."

The main charge of the court was not objected to. The objections were to certain instructions given at the request of the defendant.

They were as follows:

"1. The jury are instructed that what was required of the defendant in the conduct of its mining business, in caring for the miners employed by and engaged in working its mine, was the adoption and use of appliances and methods reasonably sufficient for the protection of the miners against any dangers attending the operation of its mine, that were obvious or might with reasonable diligence have become known; and in the absence of evidence to the contrary, it is presumed that the defendant performed its entire duty towards the miners in that respect."

"6. Although the jury may believe from the evidence that gas of the quantity mentioned in the evidence had accumulated and was allowed to remain in room 8 for the time stated in the evidence, and believe from the evidence that the explosion testified to originated in room 8, and further believe from the evidence that signals of the kind described in the evidence warning against entry into said room were placed in such a manner as to be observed by the deceased Flick and Kelly, and the meaning and significance of such signal was understood by them, and such signal was known to be in use by the miners engaged in working in said mine, and that the use of such signal was understood by such miners to inform them of the presence of gas in dangerous quantity; then, if the jury believe from the evidence that such explosion was caused by Flick and Kelly

entering said room with a naked light, the defendant is entitled to, and you should render, a verdict in its favor."

"10. The burden of showing negligence on the part of the defendant, that caused the death of the persons for which this action is brought is upon the plaintiffs, and evidence has been introduced for the purpose of showing an obstruction of the air course through which that portion of the mine where the deceased persons worked was ventilated.  The presumption is that the mine was properly and sufficiently supplied with air, unless the evidence offered establishes the contrary, and to do this the jury must find not only a partial obstruction of the air course, but that the obstruction was of such a nature and to such an extent as to prevent the passage of the necessary quantity of air, and if upon the whole testimony the jury believe that notwithstanding the partial obstruction existed, there still was space enough in the air course unobstructed to allow the proper and sufficient ventilation of the mine and of the fourth left entry where such deceased persons were at work, you will find a verdict for the defendant, unless you find from the evidence that the negligence of the defendant in some other way caused or contributed to the death of such persons.

"11. If the jury shall believe from the evidence that the defendant permitted fire gas to accumulate in room 8 of its mine, and that such gas would not produce any injury until ignited, and that it was ignited by Flick and Kelly, or either of them, by going into the said room with a naked light, (contrary to the rules and orders of the defendant,) and by such naked light the fire gas was ignited and exploded, causing the death of plaintiff's intestates, such explosion and injury were directly and immediately caused by the act of the fellow-servants of plaintiff's intestates, and not by the negligence of defendant, and defendant is not liable therefor; and a verdict should be rendered for the defendant."

The act of Congress makes three requirements —

(1) Ventilation of not less than fifty-five feet of pure air per second, or 3300 cubic feet per minute, for every fifty men at work, and in like proportions for a greater number; (2) proper appliances and machinery to force the air through the mine

to the face of working places; (3) keeping all workings free from standing gas. If either of these three requirements was neglected, to the injury of plaintiff's intestates, the defendant was liable.

We think the instructions numbered 1, 6 and 11, given at the request of the defendant, ignored the obligations of the act of Congress, and are so far inconsistent with the other instructions that they tended to confusion and misapprehension — making the duty of the mine owner relative, not absolute, and its test what a reasonable person would do, instead of making the test and measure of duty the command of the statute. The act of Congress does not give to mine owners the privilege of reasoning on the sufficiency of appliances for ventilation or leave to their judgment the amount of ventilation that is sufficient for the protection of miners. It prescribes the amount of ventilation to be not less than fifty-five cubic feet per second; it prescribes the machinery to be adequate to force that amount of air through the mine to the face of every working place. Nor does it allow standing gas. It prescribes on the contrary that the mine shall be kept clear of standing gas. This is an imperative duty, and the consequence of neglecting it cannot be excused because some workman may disregard instructions. Congress has prescribed that duty and it cannot be omitted, and the lives of the miners committed to the chance that the care or duty of some one else will counteract the neglect and disregard of the legislative mandate.

But aside from the statute, it is very disputable if the instructions were correct. It is undoubtedly the master's duty to furnish safe appliances and safe working places, and if the neglect of this duty concurs with that of the negligence of a fellow-servant, the master has been held to be liable. *Clark* v. *Soule*, 137 Mass. 380; *Cowan, Administrator*, v. *The Chicago, Milwaukee & St. Paul Railway Co.*, 80 Wis. 284; *Sherman* v. *The Menominee River Lumber Co.*, 72 Wis. 122. See also *Hayes* v. *Michigan Central Railroad Co.*, 111 U. S. 228; *Atchison, T. & S. F. R. Co.* v. *Reesman*, 19 U. S. App. 596; *Sommer* v. *Carbon Hill Coal Co.*, 59 U. S. App. 519; *Flike* v. *Boston & Albany Railroad*, 53 N. Y. 550; *Booth* v. *Railroad Co.*,

73 N. Y. 38; *Grand Trunk Railway Co.* v. *Cummings,* 106 U. S. 700.

The principle was stated in the general charge of the court, but it was materially modified in the application, and not at all considered in giving the instructions requested by the defendant.

No exceptions, however, were taken to any portion of the general charge of the court, and no question arising thereon is open to our review on this writ of error. But as we remand the case for a new trial on account of the errors which we have pointed out irrespective of the general charge, we deem it best to say that we must not be understood as affirming anything contained in instructions numbered 11 and 12, or any other instruction which conflicts with the principles announced in *Texas & Pacific Railway Co.* v. *Archibald,* 170 U. S. 665, 671.

We do not intend to express an opinion as to the facts of the case, or of any fact, or of any of the theories of the explosion. We only mean to decide that on the issues made and on the evidence, and regarding the provisions of the act of Congress, the instructions given by the trial court to the jury were erroneous.

*The judgment of the Supreme Court of the Territory is reversed, and the case remanded with instructions to reverse the judgment of the District Court and direct a new trial.*