**WESTERN UNION TELEGRAPH CO. et al.
v. HUDSON. ***

**No. 7564.**

Circuit Court of Appeals, Ninth Circuit.

March 30, 1936.

Alfred Sutro, Eugene M. Prince, Norbert Korte, and John A. Sutro, all of San Francisco, Cal. (Francis R. Stark, of New York City, and Pillsbury, Madison & Sutro, of San Francisco, Cal., of counsel), for appellant.

S. M. Saroyan, J. Francis Shirley, and Otto G. Kuklinski, all of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

The action involved in the present appeal is one for personal injuries suffered by the appellee when he was struck by a motorcycle operated by the appellant Burns, who was an employee of the appellant company.

The appellee filed suit in the superior court for the City and County of San Francisco. At the instance of the appellants, the

*Rehearing denied June 8, 1936.

cause was removed to the court below. The case was tried to a jury. The appellants' motions for a directed verdict, made at the conclusion of the appellee's case and again when both sides had rested, were denied. The jury awarded the appellee damages assessed at $7,500. Judgment was entered accordingly, and from that judgment the present appeal has been taken.

On August 31, 1932, the appellee alighted from a street car at the intersection of Sixteenth and Mission streets, in a business district of San Francisco. The car stopped at a safety zone on the south side of Sixteenth street. The safety zone was 75 feet long and 6 feet wide. Desiring to take another street car, to which he had a transfer ticket, the appellee decided to wait on the sidewalk on the south side of the street, instead of in the safety zone, though the car that he wanted was to pass over the same track as that used by the car from which he had alighted.

According to his testimony, the appellee "took a look to the left side at the automatic start-and-stop signal, and it was red for the east-bound traffic on Sixteenth Street." He then "took a look to the west," and saw, at a distance of 40 or 50 feet, the motorcycle operated by the appellant Burns, advancing in an easterly direction.

The appellee further testified that, thinking the motorcycle was so far from him that it would be safe for him to cross, he started to do so. The appellee said that he "depended" on the red signal, because "whenever they see the red signal they are supposed to put on the brakes and slow down, and when they pass that place they are supposed to pass at ten miles an hour speed."

Accordingly, the appellee stepped out of the safety zone at a point 10 or 12 feet east of the west buttons of the zone. He did not use the crosswalk, but walked straight ahead toward the south sidewalk. When he was about a step from the sidewalk, the motorcycle struck him.

The appellee testified that he was thrown 10 feet by the impact, and that he concluded the motorcycle "must have been proceeding rapidly, or it would not have thrown" him "the way it did."

While the appellants have filed 24 assignments of error, they rely upon three grounds for reversal:

(1) At the time of the accident, the appellant Burns was not acting within the course and scope of his employment with the appellant company.

(2) The appellee was guilty of contributory negligence as a matter of law.

(3) The court below erred in instructing the jury on section 94 of the California Motor Vehicle Act (St.Cal.1923, p. 545, as amended by St.Cal.1931, p. 2115).

In our view of the case, it is not necessary to consider the first proposition urged by the appellants.

On the question of the appellee's asserted negligence as a matter of law, the court below instructed the jury as follows: "A pedestrian crossing from a safety zone to the curb does not come within the provisions of the traffic ordinance which prohibits a pedestrian from crossing the street, in certain districts, except at crosswalks at street intersections, and such a pedestrian, upon alighting from a street car, is not required to travel the length of a safety zone into the crosswalk before proceeding to the curb; and although a pedestrian is not relieved from the duty to use ordinary care for his own safety, in the exercise thereof he is not excluded from the same right to use the strip between the curb and the safety zone as is enjoyed by drivers of vehicles."

The appellants maintain that the court erred in refusing to give the jury the following requested instructions on the same subject:

"No. 42. There has been introduced in evidence a duly enacted ordinance of the City and County of San Francisco, * * * which was in force and effect at the time * * * of this accident. The ordinance, in part, defines a roadway as that portion of a street between the regularly established curb lines and a crosswalk as that portion of the roadway included with the prolongation of curb and property lines at street intersections, and other places marked in accordance with the provisions of the ordinance. A safety zone is that marked portion of a roadway reserved for the exclusive use of pedestrians. The ordinance further provides that within a Business District, no pedestrian shall cross a roadway other than by a crosswalk and that it shall be unlawful for any person to be in any roadway other than in a safety zone or crosswalk, provided that this provision shall not be construed to prevent the necessary use of a roadway by a pedestrian. I instruct you that the place of this accident was within a Business District, and if you find that the plaintiff [appellee] at the time he was struck was not in a crosswalk or safety

zone, he was guilty of negligence as a matter of law unless you further find that plaintiff was making a necessary use of the roadway, and if such negligence proximately contributed to the happening of this accident, your verdict must be against the plaintiff and for the defendants."

"No. 44. I instruct you that in considering whether the plaintiff was making a necessary use of the roadway, you should consider whether it was necessary for the plaintiff to cross the roadway in order to get from the safety zone to the sidewalk or whether the plaintiff could have reached the sidewalk from the safety zone without crossing the roadway at a place other than a crosswalk. If you find that the plaintiff was in the roadway at the time of the accident and was not making a necessary use of the roadway, then you must find that he was guilty of negligence as a matter of law, and if such negligence proximately contributed to the happening of this accident, your verdict must be against the plaintiff and for the defendants."

The pertinent provisions of Ordinance 7691 (New Series) of the City and County of San Francisco are as follows:

"Article I. Section 1. Whenever in this ordinance the following terms are used, they shall have the meanings respectively ascribed to them in this section: * * *

"Roadway—That portion of a street between the regularly established curb lines."

"Article III. Section 10. Pedestrian's Limited Right to Use of Roadway.—When within the Central Traffic District or a Business District, no pedestrian shall cross a roadway other than by a crosswalk. * * *

"It shall be unlawful for any person to be in any roadway other than in a safety zone or crosswalk, provided that this provision shall not be construed to prevent the necessary use of a roadway by a pedestrian."

"Article VI. Street Cars. Section 44. Rules Applicable to Vehicles Passing Street Cars.—The driver of a vehicle overtaking any railway, interurban or street car, stopped or about to stop for the purpose of receiving or discharging any passenger, shall bring such vehicle to a full stop at least ten (10) feet in the rear of such street car and remain stationary until any such passenger has boarded such car or reached a place of safety, except that where a safety zone has been established, or at an intersection where traffic is controlled by an officer or a traffic stop and go signal, a vehicle need not be brought to a full stop before passing any such railway, interurban or street car, but may proceed past such car at a speed not greater than is reasonable or proper and in no event greater than ten (10) miles an hour and with due caution for the safety of pedestrians."

■ In California, as elsewhere, it is well settled that the violation of an ordinance as a general rule constitutes negligence, which will bar a recovery if such violation proximately contributes to the injury. Morris v. Purity Sausage Co., 2 Cal.App. (2d) 536, 38 P.(2d) 193, 195; Koeppel v. Daluiso, 118 Cal.App. 442, 447, 448, 5 P.(2d) 457; 19 Cal.Jur. 632, 638; Cal. Jur., 1928 Permanent Supplement, article on Automobiles, § 81.

While apparently conceding the validity of the foregoing doctrine, the appellee contends that it is not applicable to the case at bar. The appellee thus states his proposition: "The ordinance requiring pedestrians to cross streets in crosswalks in busy districts seeks to prevent 'jaywalking.' It is particularly applicable, of course, to persons who are crossing the roadway from curb to curb. No reasonable interpretation of that ordinance indicates that it was intended thereby to deprive street car passengers of their right to use that portion of the public street lying between a safety zone and the adjacent public sidewalk."

When the appellee contends that the ordinance is "particularly applicable" to curb-to-curb crossing, we assume that he does not mean that it is exclusively applicable to traversing of a public street. The text of the San Francisco ordinance makes it clear that it does not apply solely to a pedestrian who completely traverses the street. Section 10 provides that it shall be unlawful for any person to "be" in any roadway other than in a safety zone or crosswalk. The sole exception annexed to the foregoing provision is one that permits the pedestrian "the necessary use of a roadway."

■ The appellants were entitled to have the question submitted to the jury under proper instructions as to the effect of the appellee's admitted failure to use the crosswalk.

Of the cases relied upon by the appellee as supporting his position, only two contain facts or involve ordinances in any way approaching those at bar. Both decisions are by District Courts of Appeal in California, and were handed down in October, 1932. In each case a petition by the appellants therein to have the cause heard by the Supreme Court was denied by the latter tribunal.

In the case of Baldock v. Western Union Tel. Co., 127 Cal.App. 141, 144, 15 P.(2d) 199, 200, the court had before it the ordinance that we are here construing. The following language found in that decision, however, clearly shows that the case went off on the question of the last clear chance, and not upon any determination by the court that the ordinance does not apply to a pedestrian crossing to the curb from a safety zone:

"Defendants claim that regardless of other considerations plaintiff, by crossing where she did, violated an ordinance of the municipality prohibiting pedestrians from passing over roadways other than at a crosswalk, and was consequently guilty of negligence contributing to her injuries.

"According to Perez, he was looking straight ahead at all times. In passing the westerly end of the safety zone, he had a clear view of the street and his speed was such that he could have quickly stopped his bicycle. Under such circumstances the jury was justified in disbelieving his testimony that he did not see plaintiff in time to avoid the collision; * * * and the question whether he apprehended her dangerous position was also one for its determination. * * * The last clear chance doctrine applies notwithstanding the continuing negligence of the plaintiff."

Indeed, the closing sentence of the foregoing excerpt would indicate the court believed that, even if the plaintiff was guilty of "continuing negligence" because he violated the ordinance, notwithstanding such violation, the doctrine of the last clear chance still applied.

We are not here concerned with what "the jury was justified in disbelieving," but with the correctness of an instruction, and nothing in the decision cited would indicate approval of an instruction to the jury that the ordinance in question does not apply to a pedestrian crossing from a safety zone to a curb. Moreover, the record in the case before this court does not show that the doctrine of last clear chance

was invoked. We are not, however, expressing any opinion as to whether or not the doctrine of the last clear chance might not properly be relied upon in the instant case.

In Croxall v. Broadway Department Store, Inc., 127 Cal.App. 153, 156, 15 P.(2d) 546, the intermediate appellate court was construing article III, § 10 of the traffic ordinance of Los Angeles, which reads as follows: "Use of Roadways: It shall be unlawful for any person to stand or walk in the roadway other than in a safety zone or in a cross-walk, if such action interferes with the lawful movement of traffic; provided that no pedestrian shall cross a roadway other than by a route at right angles to the curb, or by the shortest route to the opposite curb, and provided, further, that in the Central Traffic District no pedestrian shall cross a roadway other than by a cross-walk."

A comparison of the two ordinances discloses that the San Francisco enactment provides that it shall be unlawful for any person "to be" in any roadway other than in a safety zone or crosswalk, with the sole exception of necessity. The Los Angeles ordinance, however, declares standing or walking in a roadway to be unlawful only "if such action interferes with the lawful movement of traffic." The San Francisco ordinance is therefore stricter, for it provides that only necessity, and not mere convenience, can permit a pedestrian to "be" in a roadway other than in a safety zone or crosswalk.

Accordingly, if the San Francisco traffic ordinance is controlling in the instant case, the instructions of the court below, which declared that a pedestrian has the "same right" as a motorist to use the strip between curb and safety zone, were erroneous.

It might well be questioned, however, whether the San Francisco ordinance governs the present controversy. Section 131½(c) of the California Vehicle Act, as added by Statutes of California 1931, c. 1026, p. 2127, reads as follows: "(c) Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway, provided that this provision shall not relieve the driver of a vehicle or the pedestrian from the duty to exercise due care."

If the state law controls, it is equally clear that the lower court's instructions were erroneous. Under circumstances like those with which we are here dealing, the pedestrian's right, under section 131½(c), is inferior to that of a motorist. The lower court, on the other hand, instructed the jury that the rights of the two were equal.

The question of whether the pertinent provisions of the San Francisco ordinance would be in conflict with section 131½(c), of the California Vehicle Act has not been passed upon by the Supreme Court of the state. At the request of this court, the parties herein filed supplemental briefs upon that point, which had not been discussed in the main briefs. Citing Mann v. Scott, 180 Cal. 550, 182 P. 281, Atlas Mixed Mortar Co. v. City of Burbank, 202 Cal. 660, 663, 262 P. 334, and many other California decisions, the appellee states that "the question is a very close one."

We agree with the appellee in this respect. In view of the fact that the question is one of local law, upon which the highest court of the state has made no definite pronouncement up to the present time, we are disinclined to express a view on this subject of possible conflict between the two enactments. It may develop that, before this case again is tried below, the Supreme Court of California may have settled the question. It is likewise possible that the parties may avoid this issue by proposing instructions on the doctrine of the last clear chance, or in some other way.

■ For the purposes of the present appeal, however, we need go no farther than to hold that, regardless of whether the state statute or the municipal ordinance governs, the instructions of the court below were erroneous.

With regard to the state law as to motor vehicle brakes, the court below gave the following instruction:

"The California Vehicle Act in effect at the time of the happening of the accident in this case provided:

" 'Sec. 94. Brakes. * * * it shall be unlawful for any person to operate on any public highway any motor vehicle * * * unless equipped with brakes adequate to bring such motor vehicle * * * to a complete stop when operated upon dry asphalt or concrete pavement surface where the grade does not exceed one per cent, and when operated at speeds set forth in the following table, within the distances set opposite such speeds; * * * 10 miles, stopping distance 9.3 feet; 15 miles, stopping distance 20.8 feet; 20 miles, stopping distance 37 feet.' "

At the trial, the appellee's witness, a civil engineer in the city engineer's office of San Francisco, testified that "the grade on Sixteenth Street, between Valencia and Mission, is a 2.67% upgrade toward Valencia, down toward Mission."

There was considerable conflict of testimony as to the speed at which the motorcycle operated by the appellant Burns was traveling at the time of the accident. The appellee testified that he did not know "how fast it was going." Burns himself said that the speed was "between 12 and 15 miles per hour." Germain Marc, one of the appellee's witnesses, estimated the velocity of the motorcycle as between 20 and 25 miles an hour.

Burns testified that he was about 15 feet from the appellee when he first saw him; that, traveling at a speed of 15 miles an hour, he could not stop in a distance less than "between 25 and 30 feet, because Sixteenth Street there is rather bumpy and has a slight slope towards Mission," but that "on a dead level ordinary smooth macadam pavement" he could stop within 15 or 20 feet at 15 miles an hour.

■ In view of all this testimony, we believe that an instruction as to stopping distances at 10 and 15 miles an hour on pavement surface where the grade does not exceed 1 per cent. was confusing to the jury and therefore prejudicial to the appellants, since it was immediately followed by an instruction that "the failure to comply with a municipal ordinance or a state law * * * [except the speed law] is negligence in itself, provided you find from the evidence that such negligence was the proximate cause of the injury," etc.

The appellee, however, argues that the error, if any, was not prejudicial, because the record shows "that the motorcycle was equipped with brakes which were entirely adequate under the requirements of the California Vehicle Act."

Precisely the same point was involved in Lombard v. Swall, 2 Cal.App.(2d) 59, 37 P.(2d) 696, 698, in which an order granting a new trial was affirmed:

"Moreover, we are of the opinion the court erred in giving to the jury an instruction which was offered by the defend-

ants, based upon the provisions of section 94 of the California Vehicle Act (St. 1923, p. 545, as amended by St.1931, p. 2115), to the effect that, if the jury found that the plaintiff's automobile was not equipped with brakes which enabled him to stop his car within a limited number of feet when traveling at a specified rate of speed, and that such defective brakes contributed to the accident, he would be guilty of contributory negligence which would preclude him from recovering a judgment in this case.

"There is no evidence * * * that plaintiff's automobile was equipped with defective brakes. There is no evidence that the failure of his brakes contributed to the accident. * * *

"Moreover, that test of what is deemed to be adequate mechanical brakes is specifically fixed with reference to conditions including 'dry asphalt or concrete pavement surface.' The evidence is undisputed that the highway was covered with wet and slippery snow. The instruction is not applicable to the facts of this case as they are disclosed by the record."

See, also, Fischer v. Davis Standard Bread Co., 134 Cal.App. 1, 3, 24 P.(2d) 538, 539; Pierce v. Sanden (C.C.A.8) 29 F.(2d) 87, 90.

In Williams v. Great Southern Lumber Co., 277 U.S. 19, 26, 48 S.Ct. 417, 419, 72 L.Ed. 761, the court said: "3. The judgment was properly reversed on account of these errors. This was not affected by the provision of § 269 of the Judicial Code, as amended in 1919 [28 U.S.C.A. § 391], that in an appellate proceeding judgment shall be given after the examination of the entire record, 'without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.' The errors in the exclusion and admission of evidence directly affected the substantial rights of the Company. Since the passage of this act, as well as before, an error which relates, not to merely formal or technical matters, but to the substantial rights of the parties 'is to be held a ground for reversal, unless it appears from the whole record that it was harmless and did not prejudice the rights of the complaining party.' [Case cited.]"

So here it cannot be said that the erroneous instructions were "harmless and did not prejudice the rights of the complaining party." Accordingly, the judgment of the court below is reversed.

WILBUR, Circuit Judge (concurring).

The situation presented by the record in the case at bar is somewhat unique. Upon supplemental briefs requested by the court the appellee contends that, inasmuch as the case was tried below upon the theory that the San Francisco Ordinance No. 7691, introduced in evidence by appellant, fixed the duties of the parties at the time and place of the accident, the question of whether or not that ordinance was valid or void by reason of its conflict with the state law (section 131½, California Motor Vehicle Act), referred to in the main opinion, is not material on this appeal. There is merit in this contention. Sommer v. Martin, 55 Cal.App. 603, 609, 204 P. 33; Halaminsky v. Nelson, 5 Cal. App.(2d) 287, 288, 42 P.(2d) 676. The difficulty is in applying the trial theory to the case at bar. It is true that both parties claimed in the lower court that the ordinance was controlling and that both parties argued the case in this court upon that theory. The difference between the parties there and here is as to a proper interpretation of the ordinance. The appellant contends that under the ordinance the pedestrian was not entitled to be in the roadway between the safety zone and the curb except where it was necessary, and that, as there was no showing in the trial court that it was necessary for the pedestrian to pass across this strip, its motion for a directed verdict should have been granted. On the other hand, the appellee contended in the lower court, and contends here, that he had a right to be in this strip in the roadway equal to that of the motorcycle. As pointed out in the main opinion, the ordinance which was read to the jury as a part of the charge provided that "it shall be unlawful for any person to be in any roadway other than in a safety zone or crosswalk, provided that this provision shall not be construed to prevent the necessary use of the roadway by a pedestrian." Under this provision it is clear that the only justification which the pedestrian could offer for being in this strip between the safety zone and the curb was that it was necessary. Under this provision of the ordinance, literally construed, and under the instruction that a violation of the ordinance by the plaintiff was contributory negligence, he was not entitled to recover. It is for this literal construction of the ordinance that the appellant here contends. The trial court, however, after giving the

above-quoted terms of the ordinance as a part of his charge to the jury, gave the other instruction in regard to the relative rights of the pedestrian and the motor vehicle in the strip between the safety zone and the curb which is quoted in the main opinion wherein the jury were instructed that the pedestrian was not thereby excluded from the strip between the curb and the safety zone, but was as much entitled to its use as drivers of vehicles. These instructions are inconsistent and represent the conflicting views of the parties as to the applicable law which are urged upon this court. The giving of such conflicting instructions is error, and requires a reversal, unless it can be said that no prejudice resulted therefrom. Deserant v. Cerillos Coal R. Co., 178 U.S. 409, 20 S.Ct. 967, 44 L.Ed. 1127; Elmore v. Lassen County et al. (Cal.App.) 51 P.(2d) 481; Randall's Instructions to Juries, p. 766, § 427; Branson's Instructions to Juries, § 89; 64 C.J. 671, § 600, and cases cited.

It is evident that the jury did not act upon the literal interpretation of the ordinance which made it unlawful for the pedestrian to be in the strip unless necessary, as in such a case its verdict would have been for the defendant. Consequently, we must inquire whether or not the other instruction, above mentioned, on that subject, was a correct statement of the law which should govern the parties at the point of the accident. In an attempt to solve this difficulty we called the attention of the parties to the provisions of section 131½ of the Motor Vehicle Act of California, for, if the Motor Vehicle Act controlled and rendered the ordinance void because in conflict or inconsistent therewith, we desired the assistance of the attorneys in determining its effect upon the case at bar. This question had not been argued. If the ordinance was not void, then it is clear that in determining the rights of the pedestrian in the street it is necessary to consider the interpretation of the ordinance in the light of the provisions of the Motor Vehicle Act, of which we took judicial notice, and also in the light of the inherent rights of the pedestrians and of the legislative power of the City and County of San Francisco in controlling street traffic. The parties in their supplemental briefs have conceded that the question is one of great doubt, and neither party has undertaken to resolve that doubt. Appellant has contented itself with advancing the proposition that under either the state law or municipal ordinance the instruction that a pedestrian had an equal right with the motor vehicle in the strip between the safety zone and the curb was erroneous.

As pointed out in the main opinion, the latter instruction was erroneous in either view, as the appellant contends. The appellee contends that under the ordinance the latter instruction in question was correct. In any view I do not think that appellee's position can be maintained. If the decision of the California District Court of Appeals of the Second District in Croxall v. Broadway Dept. Store, Inc., 127 Cal. App. 153, 156, 15 P.(2d) 546, was an interpretation of a Los Angeles city ordinance on all fours with the San Francisco ordinance, I would follow it, although not binding upon us, because of the peculiar local problems involved in the interpretation, but, as pointed out by Judge GARRECHT, there is a notable difference in the terms of the two ordinances which destroys the authoritative effect of the decision in Croxall v. Broadway Dept. Store, Inc., supra. For this reason, and because of conflicting instructions as to the effect of the ordinance, the judgment must be reversed.

I do not agree, however, with the main opinion in holding that it was error to instruct the jury as to the standard brakes required by the state law. The appellant's witness testified in effect that the motor vehicle was equipped with brakes which complied with the state law. There was no evidence to the contrary other than the circumstances surrounding the incident, and the appellee does not rely upon any claim of negligence with relation to the brakes. His claim is that the reason the appellant's employe could not stop the motorcycle was because it was going too fast. I think under these circumstances the jury was entitled to know the space in which a motorcycle properly equipped with standard brakes could be stopped. The fact that there was 2.68 per cent. grade and the street was rough was a matter for which the jury could make an appropriate allowance in determining whether or not the motorcycle was traveling at too great a speed.

I concur in the reversal of the judgment for the first reason, and upon the ground stated by Judge GARRECHT, and for the further reasons I have stated.