## LA GUERRA v. BRASILEIRO.
### No. 130.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1942.

David S. Romanov, of New York City (Samuel B. Goodman, of New York City, on the brief), for plaintiff-appellant.

John M. Aherne, of New York City (Bigham, Englar, Jones & Houston and John L. Quinlan, all of New York City, on the brief), for defendant-appellee.

Before AUGUSTUS N. HAND, C. E. CLARK, and FRANK, Circuit Judges.

C. E. CLARK, Circuit Judge.

The error herein assigned is the district court's action in holding the plaintiff's evidence insufficient to merit the jury's consideration in a personal injury action brought under the diversity-of-citizenship jurisdiction of the court. The plaintiff suffered his injuries while unloading a vessel owned by the defendant corporation; and since the plaintiff had seventeen years of experience in such activities, a sophisticated trier of facts would naturally look askance at an injury caused him by falling bags. Under such circumstances it is easy to accept as legal grounds for dismissal what after all are the somewhat unconscious inferences made from the facts. But the function of making such inferences must be reserved for the jury, and we believe that here there were not sufficient legal grounds to justify the taking of the case from them.

As the evidence disclosed, the plaintiff did not work for the defendant, but was a stevedore employed by a stevedoring company which, in turn, was engaged in removing cargo from the defendant's ship in the Port of New York. The cargo, bags of coffee of about 135 pounds each, was contained in a hold that also contained a cargo of bags of cocoa (each weighing about 225 pounds) destined for Philadelphia. The two cargoes were separated by a bulkhead consisting of bags of cocoa piled up in interlocked layers, alternating between layers, with each bag fore and aft, and layers "aburton," or each bag crosswise. This was apparently an accepted way of constructing a bulkhead and one which obviously would be somewhat stable. The trouble here arose because the top six or seven layers of the bulkhead were all aburton—an improper method according to the testimony.

As the New York cargo was removed, some of the aburton layers of Philadelphia cargo were observed to be leaning forward, toward the space where the men, including plaintiff, were working. This

condition was brought to the attention of the hatch boss, also an employee of the stevedoring company, who instructed the men to remove the leaning bags. After this was done, plaintiff was still not satisfied that enough Philadelphia bags had been removed. He said so to the hatch boss; but the latter said it was "O.K.," and that the men "could see that it was O.K." Plaintiff wanted "to be sure"; and the hatch boss evidently appreciated the danger, for he told a sailor of defendant (assigned to aid as needed) that the situation would become more dangerous as more cargo was discharged, and asked the sailor to go out and get some rope to lash the Philadelphia cargo. About fifteen or twenty minutes later and before the sailor had returned, some of the Philadelphia bags toppled over and struck the plaintiff, causing the injuries for which the action is brought.

The district court, on this evidence presented by the plaintiff, dismissed the action. Thereafter on a motion for a new trial it wrote an opinion in which it spelled out the reasons for its conclusion. Thus it thought the ship was turned over to the stevedores in a safe condition, and that there was no liability on the ship's part. Such a conclusion appears to entail a belief that the consequences of improperly stowed cargo, if not a result of the ship's construction, are assumed by the unloaders. In other words, full responsibility for negligent stowage falls on the stevedoring company, and it insures, so to speak, its employees against the ship's negligence. We cannot agree with this conclusion.

■ It seems clear to us that a jury could find the bulkhead improperly constructed. Since the ship's agents stowed the cargo, and since it is reasonably foreseeable that improper stowage might result in bags falling over and striking someone, the ship would be liable for this accident if the jury found it resulted from improper stowage. Cf. The Adour, D.C. Md., 21 F.2d 858, 861. There a wooden bulkhead was erected to stabilize the cargo. The court observed that "the ship was responsible for the proper construction of the bulkhead in the first instance, and * * * a similar duty existed to maintain the bulkhead in a reasonably safe condition, because the bulkhead had become part of the ship." In the instant case, the trial court evidently felt that a bulkhead of cargo was different because not "part of the ship." This hardly seems valid. The function is the same in both cases, and the type of material used should not govern liability for the safe condition of the structure. Otherwise, a ship might be better advised, wherever possible, to use cargo in order to avoid liability.

■ The trial court combined this factor of the nature of the bulkhead with an observation on the skilled nature of stevedoring. Even assuming the responsibility of stevedoring companies towards their employees, and assuming that here the employer was negligent towards plaintiff because the hatch boss required him to continue working under dangerous circumstances, the negligence of the ship was not avoided. Both could be concurrently negligent. Ford v. Allan Line S. S. Co., 227 Mass. 109, 116 N.E. 505; see Deserant v. Cerillos Coal R. Co., 178 U.S. 409, 420, 20 S.Ct. 967, 44 L.Ed. 1127. Certainly we cannot say the command of the hatch boss to continue work was an intervening cause such as to destroy the chain of events.

■ If the element of the hatch boss's control over the stevedores is to have any bearing, it must be in relation to the question of contributory negligence of plaintiff. This was clearly a question for the jury. In view of the speed of work in unloading, the decision of the hatch boss to have the cargo lashed, the fact that the more obviously dangerous bags had been removed, and the order to continue work, we cannot say as a matter of law that plaintiff should have stopped work and risked losing his job in order to avoid the chance that he would be injured. Under the circumstances the jury might not unreasonably conclude that continuance at work was a justifiable exercise of judgment on the plaintiff's part. The situation is quite otherwise than in De Luca v. Shepard S. S. Co., 2 Cir., 65 F.2d 566, Id., 2 Cir., 67 F.2d 437, certiorari denied 291 U.S. 685, 54 S. Ct. 562, 78 L.Ed. 1072, cited by appellee, for there deceased, the hatch boss, was in charge of the operation of the winch, which, rather than the cable, was held to be the cause of the accident.

■ It may be added, further, that defendant pleaded the plaintiff's negligence, upon which it relied; and if we apply the traditional rule of burden of proof envisaged by Federal Rule 8(c), 28

U.S.C.A. following section 723c[1]—which is also the rule of admiralty, The Anna O'Boyle, 2 Cir., Dec. 11, 1941, 124 F.2d 180,—it seems quite clear that upon the record at the close of plaintiff's case this burden was in no wise satisfied.

The trial court placed its principal reliance on The Beechdene, D.C.Md., 121 F. 593. Since this case was tried without a jury, it is a decision on the facts, rather than on the sufficiency of the evidence to make a prima facie case. Further, the only negligence there shown against the ship was the improper stowage of a single bag of cargo—a far cry from improperly constructing a bulkhead separating two cargoes. And the case requires the distinction between a semipermanent bulkhead admittedly part of the ship and a temporary bulkhead made of a cargo, which we have here rejected. Other cases relied on were Bettis v. Frederick Leyland & Co., 5 Cir., 153 F. 571, and Belos (Gonzales' Case), D.C.E.D.N.Y., 1939 A.M.C. 324, also decisions by the triers of fact on all the evidence that the stevedores in question were negligent, rather than rulings of nonliability as a matter of law. Here we think the plaintiff had satisfied his initial burden. The case is therefore reversed and remanded for further proceedings not inconsistent with this opinion.

---

[1] Compare discussion in Ilsen, Recent Cases and New Developments in Federal Procedure, 16 St. John's L.Rev. 1, 28–44, and Clark, Procedural Aspects of the New State Independence, 8 Geo.Wash.L. Rev. 1230; also 1 F.R.D. 417, 419; 24 J.Am.Jud.Soc. 57, 158, 41 Col.L.Rev. 1403, 1416, and authorities cited in these articles.