**MARCUS v. UNITED STATES et al.**

No. 24567–G.

District Court, N. D. California, S. D.

March 28, 1947.

Gladstein, Andersen, Resner & Sawyer, of San Francisco, Cal., for libelant.

John H. Black and Edward R. Kay, both of San Francisco, Cal., for respondents.

J. Hampton Hoge, of San Francisco, Cal., for impleaded respondent.

YANKWICH, District Judge.

On January 2, 1946, at or about the hour of 8 o'clock a. m. of said day, the M/S Anadarko Victory, owned by the United States of America and managed and operated by the Weyerhaeuser Steamship Company as general agent, was docked at Pier 90, at the Port of San Francisco, California. Bernhard Marcus was employed as a longshoreman's gang boss by the Associated Banning Company, stevedoring contractors, and at said time and place was in charge of the longshore gang which was engaged in working, handling, and moving cargo at the No. 3 hatch aboard the vessel. Marcus was in the bottom of the No. 3 hold, directing the task of working the cargo. Certain strong-

backs at the 'tween deck were in the slots provided for that purpose. The strongbacks are supposed to be locked in place, by metal flanges or locks, to secure and hold them fast in the slots.

In a libel in personam by his widow, Lena Marcus, as personal representative and administratrix-with-will-annexed of the estate of Bernhard Marcus, deceased, she alleges that Marcus came to his death while handling the cargo. She attributes his death to the negligence of the respondents in failing to lock and secure the strongbacks in place, and to provide proper and safe flanges. The libel charges that the flanges or locks were loose, did not fit properly and failed to secure, lock, or hold the strongbacks in place and that by reason of this, the vessel was unseaworthy.

She seeks $75,000 as general damages; and $600 incurred for funeral bills.

The original respondents impleaded the deceased's employer, Associated Banning Company. The original respondents denied negligence and unseaworthiness of the vessel. The impleaded respondent, Associated Banning Company filed an answer alleging that it was protected by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., under which their liability was limited, and that such liability was covered by insurance with Zurich General Accident and Liability Insurance Company, Ltd., who paid to the widow the benefits provided for her by the Longshoremen's and Harbor Workers' Compensation Act.

A study of the facts in the case, which, in the main, are undisputed leads me to the conclusion that the libelant has failed to prove that the deceased, Bernhard Marcus, came to his death by reason of any negligent act on the part of the respondents or either of them.

The libelant's attorney, with commendable frankness, admitted, at the argument, that the deceased was guilty of negligence. He insisted however that the record showed the ship to have been unseaworthy, and that this unseaworthiness was the proximate cause of the injury which resulted in Marcus's death.

I cannot agree. The evidence is clear that the strongback which gave way and fell into the hold when the longshoremen employed by Associated Banning Company, under the direction of the deceased, who was the gang boss, attempted to lift some heavy pipe without first removing the strongback, *was not defective.*

It was supplied with a means for locking it into place. This locking device was not defective or out of order. The evidence showed that, because of the weight of these steel strongbacks (2,000 pounds) they had to be lifted into place by mechanical means. In order to fit there had to be a tolerance at each end. If the strongback was moved too much in one direction, it could not be locked. So we do not have the situation which arose in American Stevedores v. Porello, 67 S.Ct. 847, decided by the Supreme Court on March 10, 1947, where, as the opinion in the Circuit Court of Appeals, shows the strongback "was defective in that it lacked the customary locking device on one end". Porello v. United States, 2 Cir., 1946, 153 F.2d 605, 606.

While it is customary for one of the ship's officers to be present when a ship is loaded or unloaded, the chief responsibility for these acts is on the stevedoring contractor.

Absent defective equipment (or unseaworthiness) or negligence, the ship owner is not liable to stevedores. Cassil v. United States Emergency Fleet Cor., 9 Cir., 1923, 289 F. 774, 775; La Guerra v. Brasileiro, 2 Cir., 1942, 124 F.2d 553; Mahnich v. Southern S. S. Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

The situation here is, in another respect, unlike those in the cases on which libelant relies. The deceased was hatch gang boss. Ordinarily, we have injury to a member of the gang, who in obeying an order given by the boss, is not chargeable with the consequence of such obedience, if it result in injury. And in the cases where liability was found (1) the danger was not apparent, U. S. Fidelity & Guaranty Co. v. United States, 2 Cir., 1945, 152 F.2d 46,

or (2) the courts refused to hold the stevedore liable for obeying the hatch gang boss. La Guerra v. Brasileiro, supra. But where the boss in charge of the operation is himself the victim of his own negligence, no liability can be fastened on any one, if his act is the sole and proximate cause of the injury.

As said by the Circuit Court of Appeals in De Luca v. Shepard S. S. Co., 2 Cir., 1943, 65 F.2d 566, 568: *"All these things were plain to be seen, and De Lucca was the man in charge of the work. It was his duty to know about all of them; and in law he is charged with the effect of the knowledge he must have acquired when he saw how the lumber .was stowed and saw that the fall was dry. He was not a seaman, but the employee of an independent contractor.* He was free to refuse to use the fall or a hidden drum, and so assumed the risk both of using the appliances furnished by the defendant which were patently defective and the risk created by conditions aboard the ship which were known to him to exist. Long v. Silver Line, 2 Cir., 48 F.2d 15; The Hindustan, D.C., 37 F.2d 932, affirmed 2 Cir., 44 F.2d 1015. Having accepted conditions as they were, knowing what they were, the added danger from the increased likelihood that kinks would form because the fall was dry and be undetected because the drum was known to him to be out of sight were inherent in the work, and it became De Lucca's duty as the man in charge to use such added precautions in operation as prudence required. His failure to do so by having a man stationed to give warning when a kink formed was the proximate cause of his death, and the motion for a directed verdict should have been granted". (Emphasis added.) See also Bryant v. Vestland, 5 Cir., 1931, 52 F.2d 1078; the Aden Maru, 1943, D.C.Tex., 51 F.2d 599; Grasso v. Lorentzen, 2 Cir., 1945, 149 F.2d 127, 129.

That the deceased was the gang boss is undisputed. It is also established that he knew that the strongback was unlocked. For before the particular operation began he ordered one of his crew to fasten the lock on it. This man found that "the dog would not go in" and reported that the strongback would not lock. Twice, as he put it, he "hollered" that fact down the hold to Marcus who .was near enough to hear. This incident occurred about five minutes before the accident. If we knew more about human beings, perhaps we could explain why a man of the deceased's experience, with that knowledge, should proceed to pull these pipes up when the line from the winch would necessarily pull against the unlocked strongback. All we know is that he ordered his men to do so. More, his walking boss, who testified in the case and who was employed by the same concern, told him to use a snatch block in the operation. He did not do so. Instead, with the danger staring him in the face, he undertook to pull these heavy pieces of pipes with a long line, with the result that the pull of the line dislodged the strongback which fell into the hold and caused the injuries from which the deceased died.

■ The strongback not having been defective and the deceased having proceeded with this operation with the knowledge that the strongback was unlocked and, therefore, unsafe to withstand any heavy pull, he was guilty of negligence which was the sole and proximate cause of his injury.

Under the circumstances, the libelant cannot recover.

The words of the 8th Circuit Court of Appeals in Johns-Manville v. Pocker, 8 Cir., 26 F.2d 204, 207 apply: *"We have here a case where there was a safe and an unsafe method of doing the work, both of them plainly apparent. Plaintiff* [the deceased here] *chose the unsafe one. He, therefore, cannot recover".* (Emphasis added.)

The respondents will prepare findings and judgment in accordance with local rule 5(e).