## GUILIANO v. UNITED STATES.

United States District Court,
S. D. New York.

Jan. 12, 1954.

Sylvia Miller, New York City, for libelant, Chester A. Hahn, New York City, of counsel.

J. Edward Lumbard, U. S. Atty., New York City, for respondent, Dorsey, Burke & Keber, James F. Hart and Morgan J. Burke, Jr., New York City, of counsel.

WEINFELD, District Judge.

Libelant seeks recovery for injuries sustained when he fell on the deck of respondent's vessel, the S.S. Carnifex Ferry, as he was attempting to board it from a lighter.

■ The libelant was a longshoreman employed by the John W. McGrath Corporation, a contracting stevedore, which had been engaged to lade the Carnifex Ferry. When the accident occurred he was returning to the "Ferry" after having aided in the transfer of stores from the lighter to the "Ferry." The respondent was under a duty to provide libelant, as such a longshoreman, with a sea-

worthy ship in which to perform his work.[1] It also owed him the duty as a business invitee to use reasonable care to provide a reasonably safe place in which to work, and this duty extended to a safe means of return to the vessel.[2] This duty was non-delegable and persisted despite any concurrent duty on the part of the stevedoring company.[3]

The libelant bases his right to recovery upon both unseaworthiness and negligence. The accident occurred on May 11th, 1945, when the S.S. Carnifex Ferry was anchored midstream in the North River opposite 79th Street, New York City. Libelant admits that earlier in the day, when he and members of his gang arrived at the Carnifex Ferry to perform their work, they boarded that ship from a launch by way of a Jacob's ladder. After lashing airplanes on the deck of the Carnifex Ferry, he and three or four members of the gang were ordered to a lighter alongside the ship to transfer stores from the lighter to the "Ferry." At this time the tops of the boxes of supplies on the lighter and the deck of the Carnifex Ferry were nearly level and a foot apart. Libelant and his fellow workers without difficulty stepped over onto the boxes in the lighter, where for several hours they performed their task of transferring the stores. Following the unloading of the stores, the deck level of the lighter was between five and seven feet below the deck level of the Carnifex Ferry. Libelant claims that he called to his foreman, who was aboard the "Ferry," for a ladder, and was told none was available; that the foreman advised him to get up as best he could; that he then attempted to hoist himself up to the "Ferry" with a boost from the rear by one of his fellow workers; that as he had one foot on the rail he fell to the deck of the "Ferry," sustaining the injuries which give rise to the present action.

Two fellow employees who had helped unload the stores from the lighter testified that immediately after the libelant fell a ladder was thrown over the side of the "Ferry" to the lighter and by means of the ladder they returned to the "Ferry." Thus, without considering the testimony of respondent's witness to the effect that the Jacob's ladder which furnished the means of ingress to the ship earlier in the day was still in its place, it is abundantly established upon libelant's own case that ladders were part of the Carnifex Ferry's equipment and were available at all times. The claim of unseaworthiness must fail and the libelant concedes as much in his brief.

There remains the question of negligence, or, as libelant poses the issue in the language of Muratore v. United States, D.C., 100 F.Supp. 276, 281, "Did the respondent breach its duty to use reasonable care to provide for decedent's safety?" The answer upon the facts must be in the negative.

The claim of negligence is based upon an alleged failure of the ship to supply a ladder when one was requested by libelant. Even were I to accept the libelant's version that upon the completion of the unloading he called to his foreman for a ladder and was told to climb aboard, there is no proof that the foreman asked any member of the ship's crew to furnish a ladder or that any member refused such a request. Apart

1. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc. v. Hawn, 74 S.Ct. 202.
2. Grillo v. Royal Norwegian Government, 2 Cir., 139 F.2d 237; Fodera v. Booth American Shipping Corporation, 2 Cir., 159 F.2d 795.

3. Vanderlinden v. Lorentzen, 2 Cir., 139 F.2d 995; LaGuerra v. Brasileiro, 2 Cir., 124 F.2d 553; Grillo v. Royal Norwegian Government, 2 Cir., 139 F.2d 237; Militano v. United States, 2 Cir., 156 F.2d 599; Guerrini v. United States, 2 Cir., 167 F.2d 352, certiorari denied, 335 U. S. 843, 69 S.Ct. 65, 93 L.Ed. 393.

from the failure to establish that a ladder had been requested and refused by the ship, there is also no showing to support a claim that the mate or crew members were aware, or should have been aware, that the unloading task had been completed and, notwithstanding, had failed to supply one of the available ship's ladders.

Respondent's crew was not required to stand by to watch the longshoremen during the unloading operation so as to make a ladder available at the very moment the work was completed and at the precise point at which the men had worked. The failure to do so was not lack of reasonable care to provide for libelant's safety or to provide him with a reasonably safe place in which to work. The libelant voluntarily decided to hazard his return to the ship without waiting or allowing a reasonable opportunity for an available ladder to be thrown over.

Finally, I find that libelant failed to use the pilot ladder which was accessible to him. This ladder had been used earlier that day by the libelant and others to board the S.S. Carnifex Ferry; it was still in place a foot aft of the stern of the lighter and was available for use by libelant when he attempted to return to the ship.

In sum, I find that libelant neither waited for a ladder to be thrown over the side nor did he undertake to use the one already lashed to the S.S. Carnifex Ferry; had he done either, he could have returned to her in safety.

Upon the entire case I find that libelant has failed to sustain the burden of proving either that the vessel was unseaworthy or that the respondent breached its duty to him.

The libel is dismissed.

The foregoing shall constitute findings of fact and conclusions of law unless either party desires enumerated findings, which may be proposed upon notice to the other side.